Paul C. SCHAEFER,
Appellee/Cross–Appellant,

v.

ARKANSAS MEDICAL SOCIETY and Trustees of the Arkansas Medical Society Pension Trust, Appellants/Cross–Appellees.

Nos. 87–2405, 87–2480.

United States Court of Appeals,
Eighth Circuit.

Submitted May 11, 1988.

Decided Aug. 15, 1988.

Michael W. Mitchell, Little Rock, Ark., for appellants/cross-appellees.

James M. Dunn, Fort Smith, Ark., for appellee/cross-appellant.

Before FAGG and WOLLMAN, Circuit Judges, RE,* Chief Judge.

RE, Chief Judge.

Paul C. Schaefer (Schaefer), retired executive vice president of the Arkansas Medical Society (AMS), sued the AMS and the Trustees of the Arkansas Medical Society Pension Trust (Trustees), in the United States District Court for the Western District of Arkansas, under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1982). Pursuant to 29 U.S.C. § 1132(a)(1)(B), Schaefer sought to recover the value of an annual cost-of-living adjustment (COLA) to his pension benefits which, according to the terms of the AMS Pension Plan (Plan), was due upon the Plan's termination. The AMS and the Trustees counterclaimed for damages alleging that Schaefer breached his fiduciary duty to the Plan, under 29 U.S.C. § 1104(a)(1)(A).

The district court held that the COLA was an accrued pension benefit, and that, although the termination of the Plan without payment of the accrued benefit violated the Plan's provisions, since Schaefer had breached his fiduciary duty as a trustee of the Plan, he should not recover the value of the COLA benefits. The court also held that the counterclaim of the AMS and the Trustees was time barred by ERISA's 3–year statute of limitations. *See* 29 U.S.C. § 1113(a)(2)(A). All parties appeal the order of the court.

On appeal, the AMS and the Trustees contend that the district court erred in applying ERISA's 3–year statute of limitations to time bar their claim for damages. The AMS and the Trustees contend that ERISA's 6–year statute of limitations is applicable because Schaefer's conduct con-

* The HONORABLE EDWARD D. RE, Chief Judge of the United States Court of International Trade, sitting by designation.

stituted "fraud or concealment" under 29 U.S.C. § 1113(a). Schaefer cross-appeals, contending that the district court erred in holding that he breached his fiduciary duty as a trustee of the Plan, and that his breach was a defense to his claim for the value of the supplemental pension benefits due him under the COLA provision.

The questions presented on this appeal are: (1) whether the district court erred in applying the 3–year statute of limitations to bar the AMS and the Trustees' claim against Schaefer for breach of his fiduciary duty, and (2) whether the district court erred in holding that Schaefer breached his fiduciary duty and that his breach was a defense to his claim. Since the district court committed no error, we affirm.

## I. BACKGROUND

Schaefer served as executive vice president of the AMS, a professional association of medical doctors, from 1951 until his retirement on July 31, 1976. He also served as a trustee of the AMS Pension Plan from its inception in 1956 until 1980. The board of trustees, which administered the Plan, consisted of Schaefer and four physicians.

In 1972, Schaefer became concerned with the amount of money available in the Plan to fund his retirement, and consulted with an attorney, Robert L. Jones, Jr., about the funding provisions of the Plan. At Schaefer's instruction, Jones prepared a letter of guaranty to be signed by the AMS which would insure continuous payment of the benefits promised under the Plan.

On February 4, 1973, the AMS Council (council), an executive body of the AMS, accepted a recommendation by Gene Warren, attorney for the AMS, that, because the Plan was underfunded, the AMS should "guarantee" in writing that it would contribute sufficient funds to provide the benefits promised to employees under the Plan. The next day, Schaefer gave Warren a proposed letter of guaranty, which was identical to the letter prepared by Jones, and suggested that Warren send the letter to him and to Leah Richmond. Richmond was an assistant, hired by Schaefer, who retired from the AMS as associate executive vice president in 1986. Although several other AMS employees were eligible to participate in the Plan, Schaefer rejected the suggestion that one letter be sent to all eligible employees. Hence, individual letters were sent only to Schaefer and to Richmond.

In 1975, Schaefer recommended to the AMS Executive Committee (executive committee), a five-member governing body of the AMS, that the Plan be amended to provide that pension benefits be subject to an annual cost-of-living adjustment (COLA), reflecting changes in the Consumer Price Index, and that employees' fringe benefits be included as compensation for purposes of calculating retirement benefits. Schaefer conducted no investigation to determine the cost of the COLA provision or the legality of the fringe benefits provision before making his presentation to the executive committee. On the recommendation of the executive committee, the council approved the amendments to the Plan.

Schaefer subsequently retained a consultant, Glen Owens, of Owens and Associates, to bring the Plan into compliance with ERISA standards. Owens voiced reservations about the cost of the COLA provision, and whether the AMS could afford the provision. Owens also expressed reservations about the legality of the fringe benefits provision. Schaefer, however, did not relay Owens' concerns to the AMS or the Trustees. Schaefer also retained a consultant, Thomas K. Sundell, of National Investors Life Insurance Company, to provide ways to fund the Plan. Sundell warned Schaefer that the COLA provision would be "an expensive addition to the Plan," and provided data projecting the expense of the provision.

After Schaefer's retirement in July 1976, the cost of the COLA provision quickly rose, and substantially increased the cost of funding the Plan. By 1978, several AMS members were concerned about the Plan's solvency and it was discovered that assets were only $104,000, while obligations exceeded $550,000. In 1979, the AMS considered modifying the Plan. Schaefer, who continued to serve as a Plan

trustee, wrote a letter to several AMS members, urging that the AMS retain the Plan. Although Owens and Sundell had informed Schaefer of the rarity of COLA provisions among small organizations like the AMS, Schaefer wrote that such plans were prevalent.

In 1979, the AMS Budget Committee met with Owens and the Trustees to discuss methods to offset the increase in the AMS' obligations to the Plan. Subsequently, the Trustees recommended a 10 percent cap on the COLA provision, and persuaded Schaefer, with the assistance of Dr. Ken Lilly, chairman of the budget committee, to accept this cap in his benefits. In 1980, the council appointed an *ad hoc* committee to investigate the Plan's high costs, and to make a recommendation as to the future of the Plan. During the investigation the AMS and the Trustees learned that Owens and Sundell had warned Schaefer about the expense of the COLA, and the possible illegality of including nontaxable fringe benefits as compensation. On January 27, 1980, the council voted to remove Schaefer from the board of trustees of the Plan. On September 7, 1980, at the conclusion of the investigation, the council voted to terminate the Plan.

On September 20, 1984, Schaefer sued the AMS and the Trustees for the wrongful denial of his supplemental pension benefits under the COLA provision, which according to the terms of the Plan, were due upon its termination. Alleging that Schaefer's conduct in promulgating the Plan amendments constituted a breach of fiduciary duty, the AMS and the Trustees counterclaimed seeking damages in excess of $140,000.

The district court found that Schaefer was guilty of "substantial self-dealing and conflicts of interest" in his promulgation of the amended Plan "without providing the Council or the other trustees with information at his disposal which showed that such provisions would be costly, to say the least, and would ultimately result in the destruction of the Plan." *Schaefer v. Arkansas Medical Soc'y*, No. 84–2299, slip op. at 21 (W.D.Ark. Sept. 28, 1987). Consequently, the court held that Schaefer's breach of his

fiduciary duty was a defense to his claim for the supplemental pension benefits due him under the COLA provision. Although the court held that termination of the Plan without payment of the COLA violated the Plan's provisions, in view of Schaefer's conduct, it declined to award him the value of the cost-of-living adjustment to his pension benefits. *Id.*, slip op. at 40. The court also held that the AMS and the Trustees' counterclaim was time barred under ERISA's 3–year statute of limitations running from September 7, 1980, the latest day that the AMS had actual knowledge of Schaefer's breach of fiduciary duty. *Id.*, slip op. at 26.

## II. DISCUSSION

It is basic that, on appellate review, the findings of fact of a district court, "whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous * * *." Fed.R.Civ.P. 52(a). A finding of fact may be said to be clearly erroneous when, " 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Since the function of an appellate court " 'is not to decide factual issues *de novo*,' " findings of fact cannot be reversed merely because the appellate court would have made different factual findings. *Anderson*, 470 U.S. at 573, 105 S.Ct. at 1511 (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969)).

The AMS and the Trustees contend that the district court erred in applying ERISA's 3–year statute of limitations, rather than the 6–year statute, to its counterclaim against Schaefer for breach of fiduciary duty. *See* 29 U.S.C. § 1113(a). Under ERISA, 29 U.S.C. § 1113(a)(2)(A), an action for breach of fiduciary duty must be brought within three years of the date on which the plaintiff had "actual knowledge"

of a breach or violation of fiduciary duty. In the case of "fraud or concealment," however, the action "may be commenced not later than six years after the date of discovery of such breach or violation." 29 U.S.C. § 1113(a).

The district court found that the AMS and the Trustees' claim, which was brought on November 19, 1984, was time barred because the latest date on which the AMS and the Trustees had "actual knowledge" of Schaefer's breach of fiduciary duty was the September 7, 1980 council meeting when the Plan was terminated. The district court found that the 6–year statute of limitations was inapplicable, stating that "while the conduct of Schaefer has crossed the line into a breach of fiduciary duty, it did not rise to the level of fraud or concealment * * *." *Schaefer v. Arkansas Medical Soc'y*, No. 84–2299, slip op. at 29. The district court noted that, for the 6–year limitations period to apply, the AMS and the Trustees must prove that Schaefer "(1) made a false representation of fact; (2) had knowledge or belief that the representation was false; and (3) intended to induce the AMS to rely on the misrepresentations. * * * [and] that the physicians were justified in relying on Schaefer and that AMS suffered damages as a result of their reliance." *Id.*, slip op. at 28. The court found that "the record abundantly shows that the physicians were derelict in not sufficiently looking out after their own business affairs, and that the physician members of the Board of Trustees were not justified in relying solely on the advice of Schaefer. The trustees had an independent duty to investigate the proposals offered by Schaefer to determine if they were in the best interests of the Plan." *Id.*, slip op. at 29.

The AMS and the Trustees argue that the district court erred by "narrowly reading the term 'fraud' in the statute to mean only 'actual fraud.'" According to the AMS and the Trustees, constructive fraud does not require a showing of justifiable reliance. This circuit, however, has stated that "justifiable reliance is a necessary element to prevail under a theory of constructive fraud." *See Union Nat'l Bank v.*

*Farmers Bank*, 786 F.2d 881, 887 (8th Cir. 1986).

In this case the record leaves no doubt that the AMS and the Trustees failed to investigate the merits of the proposals made by Schaefer to determine whether they were in the best interests of the Plan. Pursuant to the terms of ERISA, 29 U.S.C. § 1002(21)(A), and the Plan itself, the AMS and the Trustees were also fiduciaries of the Plan and are to be held accountable under the "[p]rudent man standard of care" set forth in 29 U.S.C. § 1104(a). Under this standard, a fiduciary is obligated to investigate all decisions that will affect the pension plan, and must act in the best interests of the beneficiaries. *See, e.g., Donovan v. Mazzola*, 716 F.2d 1226, 1231–32 (9th Cir.1983), *cert. denied*, 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984). It cannot be questioned that the district court's findings that the AMS and the Trustees made no independent investigation of the Plan's amendments, and that they relied solely on Schaefer's recommendations, are fully supported by the record.

The AMS and the Trustees also contend that the 6–year statute of limitations is applicable because Schaefer's conduct constituted "active concealment," and "[t]he language of § 1113 applies a six year limitations period to breaches of fiduciary duty coupled with 'concealment' even if no fraud exists." It is evident from the record that Schaefer's failure to investigate adequately and relay warnings about the feasibility and legality of the COLA and fringe benefits provisions does not rise to the level of active concealment, which is more than merely a failure to disclose. *See Hobson v. Wilson*, 737 F.2d 1, 33–34 & nn. 102–03 (D.C.Cir.1984), *cert. denied sub nom. Brennan v. Hobson*, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). Furthermore, 29 U.S.C. § 1113 incorporates "the fraudulent concealment doctrine," which requires "that plaintiffs show (1) that defendants engaged in a course of conduct designed to conceal evidence of their alleged wrongdoing and that (2) they were not on actual or constructive notice of

that evidence, despite (3) their exercise of due diligence." *See Foltz v. U.S. News & World Report, Inc.*, 663 F.Supp. 1494, 1537 & n. 66 (D.D.C.1987); *see also Hobson*, 737 F.2d at 33–34 & nn. 102–03. Hence, it was necessary for the AMS and the Trustees to show that, despite their exercise of due diligence or care, they were not on notice of Schaefer's breach of duty. *See Walsh v. Ingersoll–Rand Co.*, 656 F.2d 367, 369 n. 3 (8th Cir.1981). The district court's finding that the AMS and the Trustees were derelict in not independently investigating Schaefer's suggested amendments to the Plan is clearly supported by the record. Hence, the district court did not err in finding that Schaefer's conduct did not amount to "fraud or concealment," and, accordingly, the 3–year statute of limitations was properly applied.

On cross-appeal Schaefer alleges that the district court erred in finding that he breached his fiduciary duty to the Plan. Schaefer claims that his "efforts to obtain additional benefits for plan participants and beneficiaries was consistent with his ERISA-mandated duties to act 'solely' in their behalf." ERISA defines a fiduciary as one who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets * * *." 29 U.S.C. § 1002(21)(A)(i). The prudent person standard of ERISA requires a fiduciary of a plan to act "solely in the interest of the participants and beneficiaries * * * with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use * * *." 29 U.S.C. § 1104(a)(1)(B).

■ There is overwhelming support for the district court's finding that Schaefer, as a trustee of the Plan, was a fiduciary subject to the standard of care imposed by ERISA. When a fiduciary has dual loyalties, as Schaefer did in his capacity as a Plan trustee and an officer of the AMS, the prudent person standard requires that he make a careful and impartial investigation of all investment decisions. *See Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir.), *cert. denied*, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982). Although Schaefer is not charged with making an improper investment decision, "[a] review of a fiduciary's independent investigation is one of the well-established yardsticks against which courts have customarily tested fiduciary conduct for prudence." *See Donovan v. Bierwirth*, 538 F.Supp. 463, 470 (E.D.N.Y.1981), *modified*, 680 F.2d 263 (2d Cir.), *cert. denied*, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982).

■ In examining Schaefer's conduct in accordance with ERISA's prudent person standard, there is abundant irrefutable evidence to support the district court's finding that Schaefer breached his fiduciary duty by failing to investigate properly the feasibility and legality of the COLA and the fringe benefits provisions, prior to recommending them to the council.

Furthermore, the record amply supports the district court's finding that Schaefer's actions were motivated by a desire to "look out for himself," rather than the interests of the Plan's beneficiaries as required by ERISA. For example, the fringe benefits provision was advantageous to Schaefer in particular among the Plan's beneficiaries. For most AMS employees, the provision augmented their base compensation by the value of health and life insurance benefits. Schaefer's compensation, however, was augmented by the value of a fully paid company car in addition to dues and expenses at three private clubs. Moreover, Schaefer did not act "solely in the interests" of the beneficiaries when he disregarded the warnings of Owens and Sundell that the amendments to the Plan were costly and were potentially fatal to the Plan. On this record it cannot be doubted that Schaefer breached the fiduciary relation. *See generally* E. Re, *Remedies* 480–85 (2d ed. 1987).

Schaefer contends that the district court ignored documentary evidence, which contradicted the testimony of witnesses, in finding that he recommended the adoption and retention of the amended Plan despite

Owens' and Sundell's warnings of the harmful effect of the amendment on the Plan's solvency. Specifically, Schaefer challenges the court's finding that Owens warned him in late 1975 about the inflationary impact of a COLA provision. Schaefer alleges that Owens' testimony is contradicted by a report Owens submitted to the AMS in 1979, recommending that the AMS retain the COLA provision substantially unchanged.

■ Owens' recommendation to the AMS in 1979 does not controvert the credibility of his testimony that he warned Schaefer of the inflationary danger of a COLA provision in 1975. Furthermore, the clearly erroneous standard applies not only to credibility determinations, but also to inferences from physical or documentary evidence or other established facts. *See Anderson,* 470 U.S. at 574, 105 S.Ct. at 1511. Indeed, it has been stated that, in order to be grounds for reversal, the clearly erroneous inconsistency must appear in evidence "construed in the light most favorable to the party prevailing below." *See Craft v. Metromedia, Inc.,* 766 F.2d 1205, 1212 (8th Cir.1985), *cert. denied,* 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986). The choice made by a trial judge "between two permissible views of the weight of evidence is not 'clearly erroneous.' " *See United States v. Yellow Cab Co.,* 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949). Hence, the contention that the district court ignored Owens' 1979 report in weighing the credibility of his testimony is without merit.

Finally, Schaefer maintains that it was error for the district court to find that his breach of duty was a defense to his claim since the AMS and the Trustees waived the right to assert his conduct when they induced Schaefer to accept a 10 percent cap on his COLA benefits in November 1979. Schaefer also argues that the AMS and the Trustees should be estopped from asserting that defense.

■ Waiver is the voluntary, intentional relinquishment of a known right made by one with knowledge of material facts upon which the waiver is based. *See United States v. King Features Entertainment, Inc.,* 843 F.2d 394, 399 (9th Cir.1988); *United Forest Prods. Co. v. Baxter,* 452 F.2d 11, 16 (8th Cir.1971). Schaefer contends that in November 1979, he surrendered a valuable right in order to settle a controversy at a time when the AMS had actual or constructive knowledge of the material facts of his breach of fiduciary duty. In this case, however, there can be no waiver because the record does not reveal that the AMS, at that time, was aware of material facts as to the amendments to the Plan or Schaefer's breach of duty. It was not until 2 months later that the AMS began its investigation into the Plan's amendments, and the results were not reported until September 7, 1980.

■ As for Schaefer's estoppel argument, suffice it to say that the doctrine of equitable estoppel is not available to him because of his misconduct or breach of duty as a fiduciary to the Plan. *See Carmen v. Fox Film Corp.,* 269 F. 928, 933 (2d Cir.1920), *cert. denied,* 255 U.S. 569, 41 S.Ct. 323, 65 L.Ed. 790 (1921) (one who comes into equity must come with clean hands). The district court's holding that the AMS and the Trustees may assert Schaefer's conduct as a defense to his claim was predicated on its finding that he breached his fiduciary duty to the Plan and its beneficiaries, under ERISA and the terms of the Plan. Surely, on this record, it cannot be said that " 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *See Anderson v. City of Bessemer City,* 470 U.S. at 573, 105 S.Ct. at 1511 (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

## III. CONCLUSION

We hold that the district court committed no error in applying ERISA's 3–year statute of limitations to bar the AMS and the Trustees' claim against Schaefer for breach of fiduciary duty. In agreement with the district court, we also hold that Schaefer breached his fiduciary duty to the AMS Pension Plan, and, therefore, may not re-

**1494**

cover on his claim for the annual cost-of-living adjustment to his pension benefits. Accordingly, the judgment of the district court is affirmed.