**R.A. SCARDELLETTI, et al.**

v.

**Donald A. BOBO, et al.**

**No. JFM–95–52.**

United States District Court, D. Maryland.

Aug. 21, 1995.

Lonie A. Hassel, Robert P. Gallagher, Groom & Nordberg, Washington, DC, for plaintiffs.

Marc G. Rifkind, Slevin & Hart, Washington, DC, Patrick J. Szymanski, Baptiste & Wilder, P.C., Washington, DC, for defendants.

## MEMORANDUM

MOTZ, Chief Judge.

This action arises out of a dispute between the current trustees of the Transportation Communications International Union Staff

Retirement Plan ("Plan")[1] and its former trustees and actuary concerning the adoption of a cost of living adjustment ("COLA") in 1989 and 1991. In an effort that they assert is necessary to save the Plan from termination and resulting loss of pension benefits to Plan participants, the current trustees, R.A. Scardelletti, Frank Ferlin, Jr., R.P. Wojtowicz, and Jack Boyce, allege that the former trustees, Donald A. Bobo, R.I. Kilroy, F.T. Lynch, and Frank Mazur, breached their fiduciary duty under various sections of the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. § 1001 *et seq.* ("ERISA"), when they recommended to the Executive Council of the Transportation Communications International Union ("TCU" or "the Union") Executive Council to adopt the 1989 and 1991 COLA amendments. The current trustees also assert state law tort claims and ERISA violations against the Plan's actuary, Robert E. Nemann and Robert E. Nemann & Associates.

The former trustees have jointly moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(6), arguing that their alleged imprudence in recommending a plan amendment does not constitute a fiduciary act susceptible to review under ERISA's fiduciary standards.[2] In addition, defendants argue that this Court does not have jurisdiction to order the damages sought by plaintiffs.

# I.

The Plan is an employee benefit plan established under ERISA to provide retirement benefits to employees of TCU.[3] Approximately 400 retirees receive retirement benefits under the Plan and approximately 300 active employees of the Union are accruing benefits. Under the Plan, five union officers serve as the Plan's Board of Trustees and are responsible for its administration. Defendants Kilroy, Bobo, Lynch, and Mazur were trustees of the Plan until September 1, 1991. They were then succeeded by plaintiffs Scardelletti, Ferlin, Wojtowicz, and Boyce.[4]

The former trustees were also members of the Union's Executive Council. The Executive Council is the governing body of the organization and has authority to amend the Plan on the employer's behalf.[5] The Plan has been amended several times since it was established in 1955. The amendments challenged in this case became effective in 1989 and 1991.

## A. The 1989 COLA Amendment

At a meeting of the Plan's Board of Trustees on September 20, 1988, the former trustees discussed whether the Board should recommend a cost of living adjustment. The Plan's actuary Robert E. Nemann of Nemann & Associates presented a report and advised the former trustees of the effects of

---

1. During the period relevant to this case, the Plan was named the Railway Clerks Staff Retirement Plan and Trust Agreement ("Agreement").

2. Defendants Robert E. Nemann and Robert E. Nemann & Associates have filed an answer and have not joined in the motion.

3. My statement of the facts is based upon allegations in plaintiffs' complaint.

4. L.E. Bosher, who has served as the fifth trustee during tenures of both the former and the current trustees, is not a party to this suit, either as a plaintiff or a defendant.

5. Under the Plan document, the employer's right to amend is explicitly reserved:
   *AMENDMENT BY EMPLOYER.* The Employer shall have the right at any time and from time to time:
   (a) To amend this Agreement in any manner it deems necessary or advisable in order to qualify (or maintain qualification of) this Plan and the Trust created under it under the appropriate provisions of the Code; and
   (b) To amend this Agreement in any other manner. However, no amendment shall authorize or permit any of the Trust Fund (other than the part required to pay taxes and administrative expenses) to be used for or diverted to purposes other than for the exclusive benefit of the Participants or their Beneficiaries or estates, except as provided under Article XII and Section 20.01. No amendment shall cause or permit any portion of the Trust Fund to revert to or become a property of the Employer, except as provided under Article XII and Section 20.01; and the Employer shall not make any amendment which affects the rights, duties or responsibilities of the Trustees or the Plan Administrator without the written consent of the Trustees or the Plan Administrator....
   Agreement § 20.02, as amended by art. XVII (September 21, 1987).

such a proposal. The former trustees considered first an automatic annual COLA that would increase at the rate of inflation similar to Social Security. At that time, Nemann advised that such a proposal would be too costly and recommended instead a one-time 10% benefit adjustment. Relying on Nemann's advice, the former trustees recommended to TCU's Executive Council that the employer could amend the Plan providing for a one-time 10% COLA after five years of retirement. The Executive Council adopted the amendment and it became effective on January 1, 1989.

### B. The 1991 COLA Amendment

On February 9, 1990, the former trustees, responding to a request by a Plan participant, asked Nemann to determine whether the Plan could at that time afford an automatic COLA. At a joint meeting of the Executive Committee and Finance Committee on September 19–22, 1990, Bobo reported that the former trustees planned to consider an automatic COLA at their next meeting. Bobo also indicated that they would have a report from the Plan's actuary at that time.

On October 12, 1990, the former trustees considered a proposal to recommend an amendment adding an automatic COLA that would increase retirement benefits under the Plan every three years in an amount equal to the increase in the cost of living during each three year period, up to a maximum of 10% for each three year period. Allegedly, Nemann orally advised the former trustees that the Plan could be amended to add this limited, automatic COLA without increasing the employer's contribution rate. Therefore, the former trustees, except for Mazur who was absent from the meeting, voted to recommend to the Executive Council that the employer amend the Plan adopting the proposed COLA without increasing the contribution rate. Plaintiffs allege that the former trustees took this action without adequately questioning Nemann's recommendations or

asking him for a copy of his report. Plaintiffs further maintain that Nemann never prepared the actuarial study requested at the February 9, 1990 meeting or presented any study at the October 12, 1990 meeting.

The next day on October 13, 1990, the Executive Council voted to adopt the proposed amendment in reliance on the former trustees' recommendations and representations regarding the advice given by Nemann. The amendment became effective on January 1, 1991. Less than one year later, on September 1, 1991, the former trustees retired and began receiving benefits from the Plan, including the benefit increases provided by the automatic COLA.

### C. Alleged Effect of, and Alleged Damages Caused By the Amendments

Plaintiffs allege that the cost of funding the COLA more than doubled the required contribution to the Plan, from 17.5% of payroll to over 40% of payroll, and that the present value cost of this benefit is about $14,000,000. This contribution level required to fund the automatic COLA cannot be sustained and, therefore, plaintiffs maintain that the Plan will terminate as a result of the failure to meet ERISA's minimum funding requirements. Plan termination will cause serious harm to active and retired Plan participants because all future benefit accruals and all benefit increases under the COLA amendment will cease. Unfortunately, the current trustees are caught between a rock and a hard place to remedy this situation because ERISA prohibits amendments of the Plan repealing an automatic COLA.

### II.

In Claim I, plaintiffs allege that Kilroy, Bobo, and Lynch breached their fiduciary duty under 29 U.S.C. § 1104(a)(1)(B) [6] when they: (1) neglected to consider or investigate the feasibility of the COLA amendments; (2) voted to recommend the adoption of the

---

6. In their Complaint, plaintiffs have incorrectly cited to 29 U.S.C. § 1104(a)(1)(D). The statutory language they quote, however, is of 29 U.S.C. § 1104(a)(1)(B) which provides that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the

participants and beneficiaries and ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like conduct and similar aims.

COLA amendments without referring to an actuarial study analyzing the effects of the amendments; and (3) failed to supervise the Plan's service provider or require the completion of an actuarial study. In Claim II, plaintiffs allege that Mazur breached his duty as a co-fiduciary under 29 U.S.C. § 1105(a)(3) [7] by failing to investigate the recommendation and adoption of the COLA amendments and by failing to take corrective action against this recommendation. The former trustees gloss over these isolated events and argue that their single act of recommending the amendment for adoption, however imprudent, constitutes a settlor's act to which no fiduciary liability attaches.

### A. Breach of Fiduciary Duty

■ The former trustees as fiduciaries of the Plan are charged under ERISA with the duty to discharge their responsibilities "with the care, skill, prudence, and diligence that a prudent man ... would use." 29 U.S.C. § 1104(a)(1)(B); *Bidwill v. Garvey*, 943 F.2d 498, 507 (4th Cir.1991), *cert. denied*, 502 U.S. 1099, 112 S.Ct. 1182, 117 L.Ed.2d 425 (1992). ERISA's fiduciary duties, however, attach not to the particular person, but to the particular person performing a particular function. *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank,* — U.S. —, —-—, 114 S.Ct. 517, 523–24, 126 L.Ed.2d 524 (1993); *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1051, 122 L.Ed.2d 359 (1993); *Johnson v. Georgia–Pacific Corp.*, 19 F.3d 1184, 1188 (7th Cir. 1994); *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1158 (3rd Cir.1990).

■ Specifically, ERISA provides that: a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Under this provision, employers are permitted to wear "two hats" and assume fiduciary status only "to the extent" that they function in their capacity as plan administrators or managers. *See, e.g., Bidwill*, 943 F.2d at 505; *Dzinglski v. Weirton Steel Corp.*, 875 F.2d 1075, 1077–78 (4th Cir.), *cert. denied*, 493 U.S. 919, 110 S.Ct. 281, 107 L.Ed.2d 261 (1989); *Johnson,* 19 F.3d at 1187; *Northwest Airlines, Inc. v. Federal Ins. Co.*, 32 F.3d 349, 353 (8th Cir. 1994); *Schaefer v. Arkansas Medical Soc.*, 853 F.2d 1487, 1491 (8th Cir.1988). The question that must be decided here is which hat the former trustees were wearing when they allegedly: (1) neglected to consider or investigate the feasibility of the COLA amendments; (2) voted to recommend the adoption of the COLA amendments without referring to an actuarial study analyzing the effects of the amendments; and (3) failed to supervise the Plan's service provider or require the completion of an actuarial study.

■ The former trustees rely on the well settled rule that an employer acts as a settlor when amending a plan and, therefore, no fiduciary liability under ERISA attaches. *Curtiss–Wright Corp. v. Schoonejongen,* — U.S. —, —, 115 S.Ct. 1223, 1228, 131 L.Ed.2d 94 (1995) (citing *Adams v. Avondale Indus., Inc.*, 905 F.2d 943, 947 (6th Cir. 1990)); *Siskind v. Sperry Retirement Program, Unisys,* 47 F.3d 498, 505–06 (2nd Cir. 1995); *Izzarelli v. Rexene Prods. Co.*, 24 F.3d 1506, 1524–25 & n. 3 (5th Cir.1994); *Johnson,* 19 F.3d at 1189; *Hozier,* 908 F.2d at 1161 (collecting cases); *Sutton v. Weirton Steel Div. of Nat'l Steel Corp.*, 724 F.2d 406, 411 (4th Cir.1983), *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984). *See also* Restatement of Trusts 2d § 331 (1959); IV Scott on Trusts § 331 at 379 (1989). Un-

---

7. 29 U.S.C. § 1105(a)(3) provides that:
   [A] fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan ... if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

der these authorities, the former trustees are immune from liability to the extent they simply were voting to amend the plan.

In addition, the former trustees are immune as settlors to the extent they were making decisions on the employer's behalf which related to plan design, such as whether to offer a pension plan in the first place and what benefit features a plan should have. *Bryant v. Food Lion, Inc.,* 774 F.Supp. 1484, 1491 (D.S.C.1991); *see also* Department of Labor Op. Letter on Fiduciary Responsibility and Plan Termination to John N. Erlenborn, 13 Pens.Rep. (BNA) 472 (March 13, 1986) ("[T]here is a class of discretionary activities which relate to the formation, rather than to the management of plans. These so-called 'settlor' functions include decisions relating to the establishment, termination and design of plans and are not fiduciary activities subject to Title I of ERISA.").

■ The trustees, however, may be liable for acts in which they exercised discretionary authority or responsibility taken prior to amending the plan. *See Bidwill,* 943 F.2d at 507 (appropriate to consider the trustees' "initial act" or "first step" as well as each subsequent step to determine whether there is a breach of fiduciary duty). The plan documents themselves allocate the relevant discretionary authority or responsibility which is "pivotal" to the statutory definition of "fiduciary." *Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54, 61 (4th Cir.1992). In this case, the Plan documents provide that part of the trustees' duties with respect to plan participants' accounts includes the following:

> *GENERAL.* The Trustees shall have the following powers and duties: ...
>
> (e) To furnish the Employer with information which the Employer may require for tax *or other purposes;*
>
> (f) To engage the services of agents whom it may deem advisable to assist it with the performance of its duties; ...

> The Trustees shall exercise all of their powers, duties, and discretion under the Plan in a uniform and nondiscriminatory manner.

Agreement § 15.01 (emphasis added). Under a plain reading of these subsections, the former trustees had discretionary powers and duties to properly inform the employer of necessary information and to seek advisors to aid them in the exercise of their duties.

*Schaefer v. Arkansas Medical Society, supra,* is on point. There the court found that a former trustee of the pension fund acted in a fiduciary capacity and breached the prudent person standard when he failed in investigate the cost or legality of a COLA and fringe benefits amendment. 853 F.2d at 1492. In making this determination, the court noted that when a fiduciary has "dual loyalties," such the former trustees in this case had to the TCU and to the participants and beneficiaries, the prudent person standard requires a careful and impartial investigation of all decisions, investment decisions or otherwise. *Id.* (*citing Donovan v. Bierwirth,* 680 F.2d 263, 271 (2d Cir.), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982)).

Defendants' attempt to limit *Schaefer* by arguing that the case "turned on the defendant trustee's self-dealing and conflict of interests both of which are violations of the prohibited transaction provision set out in Section 406 of ERISA, 29 U.S.C. § 1106." Def.Reply at 9. Defendants are overreading the *Schaefer* opinion. Although the court did note that the record supported a finding that Schaefer's actions were motivated by a desire to "look out for himself," it did not cite Section 406. Indeed, the court's decision was explicitly based on violations of 29 U.S.C. § 1104(a)(1)(B) governing a fiduciary's failure to act "solely in the interests of the participants and beneficiaries" of the plan and breach of the duty of prudence. *Id.* at 1492. This is the same statutory provision that the current trustees rely on in the present case.[8]

---

8. Defendants also argue that the Eighth Circuit superseded *Schaefer* in *Northwest Airlines, Inc. v. Federal Ins. Co.,* 32 F.3d 349 (8th Cir.1994). In fact, *Northwest* stands only for the limited proposition that no fiduciary liability attaches to an employer's decision to amend a plan.

Defendants' reliance on *Johnson v. Georgia–Pacific Corp.,* 19 F.3d 1184, 1188 (7th Cir.1994), is also misplaced. *Johnson* is substantially dif-

■ The fundamental principle upon which *Schaefer* is based is black letter law: in order to meet the prudent person standard, fiduciaries must undertake a careful and impartial investigation when they do not have sufficient experience and familiarity with a particular matter. *Schaefer*, 853 F.2d at 1492; *see generally* James F. Jorden et al., *Handbook on ERISA Litigation* § 3.03[A] at 3–57 (1992). In conducting that investigation fiduciaries may retain independent, outside experts when appropriate. *See Davidson v. Cook*, 567 F.Supp. 225, 237 (E.D.Va.1983), *aff'd*, 734 F.2d 10 (4th Cir. 1984); *Donovan*, 680 F.2d at 271. The use of independent advisers is not, however, a complete defense to a claim of imprudence. *Davidson*, 567 F.Supp. at 239; *Donovan v. Mazzola*, 716 F.2d 1226, 1234 (9th Cir.1983), *cert. denied*, 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984). Fiduciaries may be liable for failing to exercise reasonable judgment in relying on the advice of independent advisors. *E.g. Roth v. Sawyer–Cleator Lumber Co.*, 16 F.3d 915 (8th Cir.1994); *Donovan v. Cunningham*, 716 F.2d 1455, 1474 (5th Cir.1983), *cert. denied*, 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 839 (1984). As one court has stated, an outside appraisal is not a "magic wand"; rather, it is "a tool" which must be "used properly." *Cunningham*, 716 F.2d at 1474. That tool is used properly only when the fiduciary ensures that the information relied on by the expert "is complete and up-to-date." *Id.* Likewise, in order to fulfill his responsibilities, a fiduciary must "exercise[ ] prudence in the selection *and retention* of such persons. The plan fiduciary will be deemed to have acted prudently in such selection *and retention* if, *in the exercise of ordinary care in such situation, he has no reason to doubt the competence, integrity or responsibility of such persons.*" Department

of Labor Interpretive Bulletin 75–8 (July 28, 1975), 29 C.F.R. § 2509.75–8 (1994) (emphasis added). Here, plaintiffs have alleged sufficient facts to establish that the former trustees did not properly assure themselves of Nemann's abilities nor that Nemann based his recommendations upon accurate and up-to-date information.

### B. Jurisdiction under ERISA to Award the Relief Demanded

■ Defendants also challenge this court's jurisdiction under ERISA to provide the damage relief requested by plaintiffs. The current trustees have brought this action under 29 U.S.C. § 1132(a)(2) and seek damages in the amount of $14,000,000 to restore to the Plan losses incurred in connection with the adoption of, and compliance with, the COLA amendments.[9]

Section 1132(a)(2) authorizes a fiduciary to bring a civil action for appropriate relief against another fiduciary who has violated 29 U.S.C. § 1109(a). Section 1109(a), in turn, provides that an ERISA fiduciary who breaches any duty is liable to the plan for: (1) damages ("to make good to [the] plan any losses to the plan resulting from each such breach"), (2) restitution ("to restore to [the] plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary"), and (3) "such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a); *Mertens v. Hewitt*, ── U.S. ──, ──, 113 S.Ct. 2063, 2067, 124 L.Ed.2d 161 (1993). The Supreme Court has emphasized that recovery for a violation of section 1109(a) must "inure[ ] to the benefit of the plan as a whole." *Massachusetts Mutual Life Ins. Co. v. Russell*, 473

---

ferent from the present case in at least two significant respects. First, in *Johnson*, plaintiffs' existing rights under the defined benefit plan there in issue were not disturbed by the allegedly wrongful acts committed by the defendants. Likewise, those acts did not threaten the financial stability of the Plan for future claimants. Second, the court based its decision solely upon 29 U.S.C. § 1002(21)(A)(i) relating to "assets" and did not mention subsection 1002(21)(A)(iii), relied upon by plaintiffs here, that define a person as a fiduciary to the extent "he exercises any

discretionary authority or discretionary control respecting management of such plan."

9. Plaintiffs also seek a Court Order (1) declaring the COLA amendments null and void as of the date of their adoption and eliminating any obligations thereunder; (2) awarding attorneys fees; and (3) ordering such further relief as the Court deems appropriate. At this stage, however, defendants have explicitly reserved their challenge to these requests for injunctive and other relief. Def.Reply at 11.

U.S. 134, 140, 105 S.Ct. 3085, 3089, 87 L.Ed.2d 96 (1985). Applying this rule, the Court found that the third clause of section 1109(a) does not establish a fiduciary's liability to a beneficiary for punitive damages or for extracontractual compensatory damages caused by the improper or untimely processing of benefits claims. *Id.* at 144, 105 S.Ct. at 3091; *accord Powell v. Chesapeake and Potomac Telephone Co. of Virginia,* 780 F.2d 419, 424 (4th Cir.1985) (denying beneficiary's claim for extracontractual and punitive damages), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986); *Kemp v. Control Data Corp.,* 785 F.Supp. 74, 75 (D.Md. 1991) (Motz, J.) (same).

Plaintiffs' complaint alleges that because of "the former trustees' conclusions and recommendations [on the COLA amendments], the Plan now estimates that in order to satisfy the minimum funding requirements imposed by ERISA, the level of contributions must be increased from the current level of 17.5% of payroll to in excess of 40% of payroll to fund the present value of COLA benefit increases of approximately $14 million." These allegations, if proven, would establish a direct loss to the Plan and not to the beneficiaries and participants. Thus, plaintiffs' damages claim is proper under Section 1109(a). However, in accordance with the teaching of *Massachusetts Mutual Life Ins.* and its progeny, plaintiffs may not recover punitive damages from the former trustees.