Case reversed and remanded by
Supreme Court opinion filed 6/10/02

Cert granted by Supreme Court
order filed 12/10/01

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROBERT A. SCARDELLETTI; FRANK
FERLIN, JR.; JOEL PARKER; DON BUJOLD,
as Trustees of the Transportation
Communications International Union
Staff Retirement Plan,
<u>Plaintiffs-Appellees,</u>

v.

GEORGE THOMAS DEBARR, Individually
and as representatives of a class of all
persons similarly situated; ANTHONY
SANTORO, SR.,
<u>Defendants-Appellees,</u>

and

DONALD A. BOBO; R. I. KILROY; F. T.
LYNCH; FRANK MAZUR,

<u>Defendants,</u>

v.

ROBERT J. DEVLIN; RETIRED EMPLOYEES
PROTECTIVE ASSOCIATION,
<u>Movants-Appellants,</u>

and

A. MEADERS; JAMES H. GROSKOPF;
THOMAS C. ROBINSON; DOYLE W.
BEAT; MIRIAM E. PARRISH; ROBERT A.
PARRISH; DESMOND FRASER; JAMES L.
BAILEY; DOROTHY DEERWESTER;
THOMAS J. HEWSON; CLAY B. WOLFE;
KENNETH B. LANE; BRIAN A. JONES;
CHARLES O. SWASY,
<u>Parties in Interest.</u>

No. 99-2619

ROBERT A. SCARDELLETTI; FRANK
FERLIN, JR.; JOEL PARKER; DON BUJOLD,
as Trustees of the Transportation
Communications International Union
Staff Retirement Plan,
Plaintiffs-Appellees,

v.

GEORGE THOMAS DEBARR, Individually
and as representatives of a class of all
persons similarly situated; ANTHONY
SANTORO, SR.,
Defendants-Appellees,

and

DONALD A. BOBO; R. I. KILROY; F. T.
LYNCH; FRANK MAZUR,

Defendants,                                             No. 00-1411

v.

ROBERT J. DEVLIN; RETIRED EMPLOYEES
PROTECTIVE ASSOCIATION,
Movants-Appellants,

and

A. MEADERS; JAMES H. GROSKOPF;
THOMAS C. ROBINSON; DOYLE W.
BEAT; MIRIAM E. PARRISH; ROBERT A.
PARRISH; DESMOND FRASER; JAMES L.
BAILEY; DOROTHY DEERWESTER;
THOMAS J. HEWSON; CLAY B. WOLFE;
KENNETH B. LANE; BRIAN A. JONES;
CHARLES O. SWASY,
Parties in Interest.

2

ROBERT A. SCARDELLETTI; FRANK
FERLIN, JR.; JOEL PARKER; DON BUJOLD,
as Trustees of the Transportation
Communications International Union
Staff Retirement Plan,
Plaintiffs-Appellees,

v.

GEORGE THOMAS DEBARR, Individually
and as representatives of a class of all
persons similarly situated; ANTHONY
SANTORO, SR.,
Defendants-Appellees,

and

DONALD A. BOBO; R. I. KILROY; F. T.
LYNCH; FRANK MAZUR,

Defendants,

v.

ROBERT J. DEVLIN; RETIRED EMPLOYEES
PROTECTIVE ASSOCIATION,
Movants-Appellants,

and

A. MEADERS; JAMES H. GROSKOPF;
THOMAS C. ROBINSON; DOYLE W.
BEAT; MIRIAM E. PARRISH; ROBERT A.
PARRISH; DESMOND FRASER; JAMES L.
BAILEY; DOROTHY DEERWESTER;
THOMAS J. HEWSON; CLAY B. WOLFE;
KENNETH B. LANE; BRIAN A. JONES;
CHARLES O. SWASY,
Parties in Interest.

No. 00-1525

3

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge.
(CA-97-3464-FJM)

Argued: October 31, 2000

Decided: July 27, 2001

Before WILLIAMS and MICHAEL, Circuit Judges, and
Joseph F. ANDERSON, Jr., Chief United States District Judge
for the District of South Carolina, sitting by designation.

_____

Affirmed in part, reversed in part, and remanded by published opin-
ion. Judge Williams wrote the majority opinion in which Chief Judge
Anderson joined. Judge Michael wrote an opinion concurring in part
and concurring in the judgment.

_____

## COUNSEL

**ARGUED:** Arthur McKee Wisehart, WISEHART & KOCH, New
York, New York, for Appellants. William Francis Hanrahan,
GROOM LAW GROUP, CHARTERED, Washington, D.C.; Barbara
J. Kraft, BEINS, AXELROD & KRAFT, P.C., Washington, D.C.;
Kenneth M. Johnson, TUGGLE, DUGGINS & MESCHAN, P.A.,
Greensboro, North Carolina, for Appellees. **ON BRIEF:** KAHN,
SMITH & COLLINS, P.A., Baltimore, Maryland, for Appellants.
Leonie Hassel, GROOM LAW GROUP, CHARTERED, Washington,
D.C., for Appellees Scardelletti, et al.

_____

**OPINION**

WILLIAMS, Circuit Judge:

Appellant Robert Devlin unsuccessfully sought to intervene to challenge a class action settlement in the United States District Court for the District of Maryland. Under the class settlement, the trustees (the new trustees)[1] of the Transportation Communications International Union Staff Retirement Plan (the Plan) and the named representatives of the class[2] agreed to the elimination of cost of living adjustment ("COLA") benefits that had been previously enacted by the Plan's former trustees[3] (former trustees) (we will refer to the appellees collectively as "the Trustees"). On appeal, Devlin asserts that he was entitled to intervene before the district court under Federal Rule of Civil Procedure 24(a) and (b) to challenge the settlement and that even if the district court properly denied his motion to intervene, he is nevertheless entitled to appeal from the district court's final order approving the settlement. Devlin also argues that the district court's injunction under the All Writs Act prohibiting him from collaterally attacking the settlement in another jurisdiction was improper under Federal Rule of Civil Procedure 65. We conclude that the district court did not err in denying Devlin's untimely motion to intervene and that Devlin, therefore, lacks standing to appeal the merits of the class action settlement. We reverse and remand the district court's All Writs Act injunction, however, so that the district court may articulate its reasons for issuing the injunction as required by Federal Rule of Civil Procedure 65.

_____

[1] The new trustees are Appellees Robert Scardelletti, Frank Ferlin, Joel Parker, and Don Bujold.
[2] Appellee George Thomas Debarr is the named representative of the Active Subclass. Appellee Anthony Santoro is the named representative of the Retiree Subclass. Debarr and Santoro are parties both individually and as class representatives.
[3] The former trustees are Appellees Donald Bobo, R.I. Kilroy, F.T. Lynch, and Frank Mazur.

5

I.

The Transportation Communications International Union (TCU) is a labor union representing approximately 85,000 employees, mostly in the railroad and service industries. The Plan is a defined benefits pension plan that covers TCU's officers and employees. In October 1990, the former trustees recommended that the Plan be amended to add a COLA adjustment equal to the increase in the COLA index for every three years after a participant's retirement. As a result of the amendment, which became effective on January 1, 1991, the existing retirees received increases in their pensions based upon the number of years they had been retired.

In late 1991, TCU elected new officers and selected the new trustees to replace the former trustees. In 1993, however, it was revealed that the former trustees had relied upon an incorrect valuation of the Plan's liabilities in deciding to enact the COLA amendment and that enactment of the COLA amendment had increased the Plan's liabilities by approximately $20 million. The new trustees believed that they could not rescind the COLA benefits across the board because, under ERISA, they were prohibited from amending the Plan to reduce accrued benefits. <u>See</u> 29 U.S.C.A. § 1054(g)(1) (providing that accrued benefits "may not be decreased by amendment of the plan").[4] Accordingly, they amended the Plan to "freeze the COLA as it pertain[ed] to the future service accrual for active employees," (J.A. at 3), thereby "eliminating COLA increases based on future service under the Plan." (Appellee's Br. at 11.) The amendment did not, however, eliminate the COLA benefits for participants who were retired as of January 1, 1991.

In January 1995, the new trustees filed suit against the former trustees in the United States District Court for the District of Maryland seeking damages and an equitable decree declaring the COLA amend-

_____

[4] 29 U.S.C.A. §1054(g)(1) provides:

> (g) Decrease of accrued benefits through amendment of plan
>
> (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) or 1441 of this title.

6

ment void as a product of fiduciary breaches.[5] <u>See Scardelletti v. Bobo</u>, 897 F. Supp. 913 (D. Md. 1995); <u>Scardelletti v. Bobo</u>, No. JFM-95-52 (D. Md. Sept. 8, 1997). The district court found in favor of the new trustees, agreeing that the former trustees had breached their fiduciary duties. The district court also concluded that the 1991 COLA benefit was not an accrued benefit for pre-1991 retirees such as Devlin because it had not been received prior to their retirement.[6] In accordance with the district court's decision, the new trustees amended the Plan and rescinded the COLA for participants who had retired prior to January 1, 1991 (the 1997 amendment).

On October 14, 1997, the new trustees filed the present action as a class action in anticipation of challenges to the 1997 amendment, seeking a declaration that the 1997 amendment was binding on all Plan participants or, in the alternative, that the 1991 COLA amendment was void as to all participants. The new trustees' original complaint named Devlin as a class representative for the Retiree Subclass because he previously had been active in challenging the new trustees' efforts to eliminate the COLA benefits. Devlin, however, refused to accept the position. The new trustees, therefore, named a new representative for the Retiree Subclass, Anthony Santoro.

---

[5] The new trustees requested "appropriate equitable relief" pursuant to ERISA § 502(a)(2) and (a)(3) for damages and to nullify the COLA amendment for all Plan participants.

[6] The district court originally concluded that the COLA benefit was an accrued benefit for pre-1991 retirees. <u>See Scardelletti v. Bobo</u>, 897 F. Supp. 913, 916 (D. Md. 1995). As noted above, accrued benefits generally cannot be eliminated by amendments to the plan. <u>See</u> 29 U.S.C.A. § 1054(g)(1). The district court, with little elaboration and presumably relying upon § 1054(g), stated that "[u]nfortunately, the current trustees are caught between a rock and a hard place to remedy this situation because ERISA prohibits amendments of the Plan repealing an automatic COLA." <u>Bobo</u>, 897 F. Supp. at 916. It later reconsidered, however, stating that "if an employee works with the expectation that she is earning, and will receive, a pension benefit, an employer may not later decide not to give her the benefit that it has promised and she has earned. In the present case, Plan participants who retired prior to 1991 did not work with the expectation that they would receive a COLA. Thus, the COLA was not an accrued benefit." <u>See Scardelletti v. Bobo</u>, No. JFM-95-52, at 18-19 (D. Md. Sept. 8, 1997).

7

On February 9, 1999, the district court for the District of Maryland conditionally certified the class pursuant to Federal Rule of Civil Procedure 23(b)(1)[7] and divided it into two subclasses: those who would benefit from the removal of COLA (the Active Subclass), and those who would benefit from the retention of COLA (the Retiree Subclass). In May 1999, with the assistance of a magistrate judge, the new trustees and the class representatives agreed upon a settlement under which the COLA benefits would be eliminated in exchange for certain other benefits. Under the proposed settlement, it was agreed that the district court would enter a consent order declaring the 1991 COLA benefit void at its inception.

In the meantime, Devlin and four other retirees [8] were pursuing actions in the Southern District of New York alleging claims under the ADEA and ERISA against TCU relating to their death benefits and medical benefits. They also included a claim relating to the 1997

_____

[7] Rule 23(b)(1) provides,

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>
> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests . . . .

Fed. R. Civ. P. 23(b)(1).

[8] The four other retirees are Andrew Hagan, Thomas Hewson, Steven Milone, and Frederick Rinckwitz, who, along with Devlin, filed suit individually "and `as agents on behalf of all' other retirees and their beneficiaries" against TCU. Devlin v. Transportation Communications Int'l Union, 173 F.3d 94, 97 (2d Cir. 1999). Hagan, Hewson, Milone, and Rinckwitz are not involved as individuals in the Maryland litigation, although Devlin moved to intervene on behalf of himself and the Retired Employees Protective Association (REPA).

Amendment, arguing that the 1997 Amendment was motivated by age discrimination. See Devlin v. Transportation Communications Int'l Union, 175 F.3d 121, 126 (2d Cir. 1999). On April 13, 1999, the Second Circuit affirmed the Southern District of New York's dismissal of Devlin's COLA claim, stating that "[t]he exact COLA issue that the appellants are pursuing . . . is being addressed by the district court in Maryland. . . . It seems eminently sensible that the Maryland district court should resolve fully the COLA amendment issue, given that that court already ruled that the amendment could be repealed as to those who retired prior to 1991, and that court is already entertaining a suit in which the legality of such a repeal is at issue." Id. at 132. The Second Circuit also noted that "though Devlin did not want to be the lead defendant in [the Maryland class action] because the case was pending in Maryland and Devlin was residing in the Northeast, the fact remains that Devlin and others in his position can be actively involved in the case." Id.

Shortly after the Court of Appeals for the Second Circuit affirmed the dismissal of Devlin's challenge to the 1997 Amendment, Devlin became interested in the class action pending in the district court in Maryland. On April 20, 1999, Devlin's counsel sent a letter to the district court informally seeking to intervene in the class action. On May 12, 1999, Devlin sent another letter through counsel to the district court repeating his informal request to intervene and informing the district court that Devlin was "still await[ing] a response from Your Honor." (J.A. at 732.) For whatever reason, Devlin did not formally move to intervene, nor did he take any further action to follow up on these letters, until September 1999.

On August 27, 1999, the Trustees filed a motion for preliminary approval of the settlement in the District of Maryland. On September 10, 1999, Devlin finally sought leave to intervene pursuant to Federal Rule of Civil Procedure 24(a) and (b).[9] At the November 12, 1999 fairness hearing, the district court denied Devlin's motion to intervene as "absolutely untimely." (J.A. at 2685.) It then examined the considerations leading to the settlement, heard Devlin's objections, and approved the settlement. Because Devlin was not a party, the district

_____

[9] Federal Rule of Civil Procedure 24(a) relates to intervention of right, and Rule 24(b) relates to permissive intervention.

9

court also denied Devlin's motions for a preliminary injunction, to disqualify counsel, and to strike declarations. In approving the settlement, the district court declared the 1991 COLA Amendment "null and void as of its adoption and of no force or effect." (Supp. J.A. at 948.) On November 24, 1999, Devlin noted his appeal.

On January 4, 2000, Devlin, Hagan, Hewson, Milone, and Rinckwitz, individually and on behalf of REPA, filed a motion in the United States District Court for the Southern District of New York seeking to amend that court's earlier judgment because, they asserted, the District of Maryland erred in approving the settlement, refusing to allow Devlin to intervene, and foreclosing Devlin's right to sue for age discrimination. The Trustees responded by moving in the district court in Maryland to enjoin Devlin under the All Writs Act in an effort to dismiss the New York action and to prevent Devlin from interfering with the Maryland proceedings. On March 10, 2000, the district court in Maryland granted the injunction, concluding that Devlin's purpose in bringing the New York action was to interfere with the settlement.

Devlin raises several arguments on appeal. First, Devlin argues that the district court erred in denying his motion to intervene. Second, Devlin argues that he has standing to appeal from the district court's final order approving settlement even though he did not successfully intervene because he tried to intervene and objected to the settlement at the fairness hearing. Third, Devlin argues that the district court should not have approved the settlement. Finally, Devlin argues that the district court's All Writs Act injunction prohibiting him from attacking the settlement in New York was improper under Federal Rule of Civil Procedure 65. We address each argument in turn.

II.

Devlin first argues that the district court erred in denying his motion to intervene. The district court denied Devlin's motion to intervene because it concluded that Devlin's attempt to intervene was "absolutely untimely" (J.A. at 2577) and that Devlin's interests were adequately represented by the Retiree Subclass representative, Santoro. We review the district court's denial of intervention for an abuse

10

of discretion. <u>See Virginia v. Westinghouse Elec. Corp.</u>, 542 F.2d 214, 216 (4th Cir. 1976).

Devlin sought both intervention of right and permissive intervention. To intervene of right pursuant to Federal Rule of Civil Procedure 24(a), an applicant must satisfy all four of the following requirements: (1) the application must be timely; (2) the applicant must have an interest in the subject matter sufficient to merit intervention; (3) the denial of intervention would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation. <u>See</u> Fed. R. Civ. P. 24(a); <u>Houston General Ins. Co. v. Moore</u>, 193 F.3d 838, 839 (4th Cir. 1999). Federal Rule of Civil Procedure 24(b), which addresses permissive intervention, provides that "[u]pon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b). Under either Rule 24(a) or 24(b), the application for intervention must be timely. <u>See</u> Fed. R. Civ. P. 24(a) & (b) (requiring "timely application"); <u>Gould v. Alleco, Inc.</u>, 883 F.2d 281, 286 (4th Cir. 1989) ("Both intervention of right and permissive intervention require "timely application."); <u>see also Houston General</u>, 193 F.3d at 839 ("[T]imeliness is a cardinal consideration of whether to permit intervention." (internal quotation marks omitted)). Although Rule 24 "requires that the motion to intervene be `timely,' . . . it does not attempt to define the term or specify rigid time limits." <u>United States v. South Bend Community Sch. Corp.</u>, 710 F.2d 394, 396 (7th Cir.1983); <u>see Black v. Central Motor Lines Inc.</u>, 500 F.2d 407, 408 (4th Cir. 1974) (noting that "Rule 24 is silent as to what constitutes a timely application and the question must therefore be answered in each case by the exercise of the sound discretion of the court"). "The purpose of the requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." <u>South Bend</u>, 710 F.2d at 396. To determine whether an application for intervention is timely, we examine the following factors: how far the suit has progressed, the prejudice that delay might cause other parties, and the reason for the tardiness in moving to intervene. <u>See</u> <u>Gould</u>, 883 F.2d at 286. Where intervention is of right, "the timeliness requirement of Rule 24 should not be as strictly enforced as in a case

11

where intervention is only permissive." <u>Brink v. DaLesio</u>, 667 F.2d 420, 428 (4th Cir. 1981).

We cannot conclude, under any standard of timeliness, that the district court abused its discretion in concluding that Devlin's motion was untimely. Devlin was aware of his interest in the litigation from the outset of the case, as demonstrated by his early and continuous opposition to the removal of the COLA benefits. Nevertheless, instead of participating in the Maryland litigation, he pursued a separate suit in New York and even declined the role of named class representative in the Maryland suit. Only after the New York courts deferred to the Maryland court on the COLA issue did Devlin turn his attention to the Maryland case. At that point, Devlin still did not formally move to intervene. Although Devlin argues that he was not aware of his interest in the settlement until the notice of proposed settlement, Devlin's argument is belied by his participation in the New York case, as well as by his letters, sent to the district court four months before his formal motion to intervene, that clearly indicate that he knew that his interests might be impacted by the proposed settlement. (<u>See</u> J.A. at 469 (Letter of April 20, 1999); J.A. at 731 (Letter of May 12, 1999)); <u>see Hill v. Western Elec. Co.</u>, 672 F.2d 381, 386 (4th Cir. 1982) ("In a class action the critical issue with respect to timeliness is whether the proposed intervenor moved to intervene as soon as it became clear that the interests of the unnamed class members would no longer be protected by the named class representatives." (internal quotation marks and alterations omitted)); <u>United States v. Pitney Bowes, Inc.</u>, 25 F.3d 66, 71, 74 (2d Cir. 1994) (affirming denial of intervention where intervenor had constructive knowledge of his interest for 15 months and actual knowledge for eight months); <u>cf. South Bend</u>, 710 F.2d at 396 (stating that prospective intervenor generally must move promptly for intervention as soon as he "knows or has reason to know that his interests might be adversely affected by the outcome of the litigation").

We also have no difficulty concluding that Devlin's inexplicable delay prejudiced the parties because, despite his longstanding awareness of his interest in intervening, Devlin waited until the settlement negotiations were complete before seeking formally to intervene. <u>See</u> <u>Hill</u>, 672 F.2d at 386 (stating that the "most important consideration (in passing on an application for intervention) is whether the delay

12

has prejudiced the other parties" (internal quotation marks omitted)). Devlin's intervention at that point would have likely resulted in further delay and substantial additional litigation. As the district court noted: "If we went to another stage, another degree of complexity it might make it impossible to achieve any settlement at all no matter how, no matter how much it would be in everybody's interest to achieve it." (J.A. at 2784.) The district court also stated that "more delay wouldn't be to the benefit of the retiree subclass, particularly those who've retired before 1991 . . . just more delay, more complexity would make it, might make it impossible ever to resolve this issue which cries for resolution." (J.A. at 2784.); see County of Orange v. Air California, 799 F.2d 535, 537-38 (9th Cir. 1986) (concluding that motion to intervene was untimely even though filed just two days after the parties notified the district court of proposed settlement because the district court concluded that allowing intervention might undo the resolution of protracted litigation). We agree with the district court that the threat of further delay and the prospect of complicated litigation, which, at that late date might have unraveled the settlement crafted by the parties, were sufficient bases from which to conclude that Devlin's untimely motion to intervene prejudiced the parties. In light of Devlin's delay in seeking to intervene, his lack of explanation for his extended delay, and the prejudice arising from the further delay that would necessarily have followed Devlin's intervention, we cannot conclude that the district court abused its discretion in finding Devlin's motion for intervention untimely.[10] Accordingly, we affirm

_____

[10] Devlin also argues that based upon his objections at the fairness hearing, the district court should have ordered discovery with respect to his argument that his interests were not adequately represented because class counsel and the class representatives had conflicts of interest. We have previously stated, however, in the context of objecting named plaintiffs who were appealing a class action settlement, that "[w]hile [the court] should extend to any objector to the settlement leave to be heard, to examine witnesses and to submit evidence on the fairness of the settlement, it is entirely in order for the trial court to limit its proceedings to whatever is necessary to aid it in reaching an informed, just and reasoned decision." Flinn v. FMC Corp., 528 F.2d 1169, 1173 (4th Cir. 1975) (internal quotation marks omitted). In other words, "[s]o long as the record before it is adequate to reach an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated and

13

the district court's denial of Devlin's motion to intervene.**11**

III.

We next address Devlin's challenge to the class settlement. As a threshold matter, we first must address whether Devlin has standing to challenge the merits of the settlement on appeal even though he failed successfully to intervene below. See Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1464 n.6 (4th Cir. 1996) ("Because the issue of standing . . . is jurisdictional in nature, we decide it first.").

Devlin asserts that he has standing to challenge the settlement by
_____
form an educated estimate of the complexity, expense and likely duration of such litigation and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise, it is sufficient." Id. (internal quotation marks and alterations omitted). In the present case, the district court thoroughly considered the fairness and adequacy of the settlement, and it had heard evidence not only in this case but from prior related cases as well. Thus, it was informed as to the quality of representation, the issues at hand, and the concerns of the objecting participants. Cf. In re Jiffy Lube Securities Litigation, 927 F.2d 155, 159 (4th Cir. 1991) ("Although this settlement was reached so early in the litigation that no formal discovery had occurred, the court found that documents filed by the plaintiffs and evidence obtained through informal discovery yielded sufficient undisputed facts to support the extent of JLI's insolvency and the difficulties plaintiffs would have in proving fraudulent intent under both federal and state securities laws.").
**11** Having concluded that the district court did not abuse its discretion in denying Devlin's motion to intervene, we also conclude that the district court did not err in denying as moot his motions for preliminary injunction, to strike evidence, and to disqualify counsel, which accompanied his motion to intervene. See Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 596 (7th Cir. 1993) (noting in class action that "[t]he district court recognized that its denial of intervention mooted the putative interveners' other motions"); cf. Houston General Ins. Co. v. Moore, 193 F.3d 838, 839 (4th Cir. 1999) (affirming non-class-action case in which "[t]he district court denied Beaumont's motion to intervene, thus rendering the motion to vacate the underlying judgment moot").

14

virtue of his objections at the fairness hearing and his unsuccessful attempt to intervene. The Trustees argue that Devlin was not a named party to the action because he failed to intervene and therefore, he cannot appeal the merits of the settlement. Courts have divided on whether a class member who objects but is denied intervention has standing to appeal the merits of the class action settlement. Some courts require successful intervention before a non-named class member may challenge the merits of a class settlement on appeal. See Felzen v. Andreas, 134 F.3d 873, 874-75 (7th Cir. 1998) (stating, in a shareholder case, that an attempt to intervene is not enough to confer standing and abrogating its former rule that class members and stockholders could appeal without intervening), aff'd by equally divided Court, 119 S. Ct. 720 (1999); Cook v. Powell Buick, Inc., 155 F.3d 758, 761 (5th Cir. 1998) (stating, in case where would-be intervenors appealed both the denial of intervention and the judgment approving the settlement, that "[i]t is well-settled . . . that nonnamed class members of a certified class may not appeal the final judgment in a class action. Because the proposed intervenors were denied leave to intervene and, thus, never obtained the status of party litigants in this suit, we must dismiss their appeal as to all issues except the denial of their motion to intervene."); Gottlieb v. Wiles, 11 F.3d 1004, 1008-09 (10th Cir. 1993) (requiring actual party or intervener status for standing and stating that "[p]ermitting unnamed class members to pursue an appeal contrary to the wishes of the named class representatives would effectively substitute the unnamed members for the certified class representatives"); see also Guthrie v. Evans, 815 F.2d 626, 628-29 (11th Cir. 1987) (describing reasons that individual non-named class members should not have standing to appeal a final judgment binding on the class members).[12] As articulated by the Sixth Circuit, "a mere vol-

_____

[12] These courts also point to the Supreme Court's decision in Marino v. Ortiz, 484 U.S. 301 (1988) (per curiam). In Marino, the Supreme Court addressed in a non-class action whether police officers who were not parties could challenge a consent decree settling a Title VII lawsuit against the City of New York where the officers had objected to the settlement at the fairness hearing but had not moved to intervene either on appeal or before the district court. The Court affirmed the Court of Appeals for the Second Circuit's conclusion that "because petitioners were not parties to the underlying lawsuit, and because they failed to intervene for purposes of appeal, they may not appeal from the consent decree approving that lawsuit's settlement." Id. at 304. In so holding, the

15

untary appearance to state or file objections is an insufficient basis for standing to appeal," although "a non-named class member has standing to appeal a settlement order if he has formally intervened in the

_____

Court reiterated the rule that "only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment" and noted that "[t]he Court of Appeals suggested that there may be exceptions to this general rule, primarily when the nonparty has an interest that is affected by the trial court's judgment. We think the better practice is for such a nonparty to seek intervention for purposes of appeal; denials of such motions are, of course, appealable." Id. (internal quotation marks omitted and emphasis added).

The Seventh Circuit, in Felzen v. Andreas, 134 F.3d 873 (7th Cir. 1998), aff'd by equally divided Court, 119 S. Ct. 720 (1999), reads Marino broadly to support its conclusion that a class member must formally become a party to appeal the final decision in derivative or class action litigation. See id. at 875-77. Neither the Tenth Circuit's decision in Gottlieb v. Wiles, 11 F.3d 1004 (10th Cir. 1993), nor the Eleventh Circuit's decision in Guthrie v. Evans, 815 F.2d 626 (11th Cir. 1987), relies upon Marino; rather, these courts rely upon practical policy concerns underlying Federal Rule of Civil Procedure 23 to conclude that successful intervention is a prerequisite to appellate standing. The Third Circuit has distinguished Marino on the grounds that Marino did not involve members of a class action who were objecting to a class settlement and that the plaintiffs in Marino had not attempted to intervene below, although they had objected to the consent decree at a hearing before the district court. See Bell Atlantic Corp. v. Bolger, 2 F.3d at 1307 (recognizing Marino's holding that generally only parties may appeal but stating that "it is not settled whether an objecting member of the class or derivative litigation who is not a named party may appeal the court's approval of the compromise"); cf. also Kaplan v. Rand, 192 F.3d 60, 67-68 (2d Cir. 1999) (rejecting the Seventh Circuit's broad reading of Marino in Felzen); Shults v. Champion Int'l Corp., 35 F.3d 1056, 1061 (6th Cir. 1994) (recognizing that "Marino addressed the standing to appeal of nonparties and not . . . of non-representative members of a class or derivative suit," but concluding that "Marino supports the notion that persons who are not proper parties should overcome some additional hurdle before attaining, for purposes of appeal, party status" (emphasis added)). We agree with those courts that have declined to apply Marino in the context of a non-named class member seeking to appeal from the final judgment in a class action.

16

action" or "if a motion to intervene, which is then appealed, should have been granted." See Shults v. Champion Int'l Corp., 35 F.3d 1056, 1061 (6th Cir. 1994). Other courts, by contrast, broadly permit non-named class members to appeal the merits of a class settlement where they objected or tried to intervene below. See In re PaineWebber Inc. Ltd. Partnerships Litigation, 94 F.3d 49, 53 (2d Cir. 1996) (stating that individual non-named members of the class can appeal the district court's approval of the settlement as unfair "if they objected to the proposed settlement at the Rule 23 hearing"); Carlough v. Amchem Prods., 5 F.3d 707, 710 (3d Cir. 1993) (stating that the district court's denial of a motion to intervene is not immediately appealable because "the objecting class members will be able to appeal from any final order entered in the district court"); see also Marshall v. Holiday Magic, Inc., 550 F.2d 1173, 1176 (9th Cir. 1977) (stating that "[a]s members of the class, their legal rights are affected by the settlement and they have standing to sue"). We have not previously addressed this issue in a published decision. **13**

Those courts that have required actual intervention as a prerequisite to standing generally have relied upon the following rationale, first articulated by the Eleventh Circuit in Guthrie :

_____

**13** In the non-class action context, we have stated that

> persons who are neither original parties to, nor intervenors in, district court proceedings ordinarily may not appeal a judgment of the district court, [t]his rule . . . is not without exception. For example, a person who [1] has an interest in the cause litigated and [2] has participated in the proceedings actively enough to make him privy to the record may appeal despite the fact that he was not named in the complaint and did not intervene.

Davis v. Scott, 176 F.3d 805, 807 (4th Cir. 1999) (internal quotation marks omitted). But see Gottlieb v. Wiles, 11 F.3d 1004, 1007 (10th Cir. 1993) (stating that because "Rule 23 was intended to promote the efficient resolution of claims in cases involving multiple parties with similar claims, to eliminate repetitious litigation, and to avoid inconsistent judgments . . . . [c]ases addressing standing in other contexts are therefore inapplicable," including cases permitting non-parties in non-class actions to appeal where they have interests in the litigation).

17

There are essentially three reasons for holding that individual, non-named, class members do not have standing to appeal a final judgment binding on the class members. First, such individuals cannot represent the class absent the procedures provided for in Rule 23 of the Federal Rules of Civil Procedure. Second, class members who disagree with the course of a class action have available adequate procedures through which their individual interests can be protected. Third, class actions could become unmanageable and non-productive if each member could individually decide to appeal.

Guthrie, 815 F.2d at 628. The Tenth Circuit in Gottlieb explained that

Rule 23 was intended to promote the efficient resolution of claims in cases involving multiple parties with similar claims, to eliminate repetitious litigation, and to avoid inconsistent judgments. To that end, the Rule elaborates comprehensive procedures to be followed in class actions. These procedures represent a careful balancing of the need for efficiency with the need to ensure adequate protection for the individual members of the class, factors not present in non-class action contexts.

Gottlieb, 11 F.3d at 1007 (internal citation omitted). In essence, these courts have reasoned that permitting non-named class members to appeal absent successful intervention fragments the class by allowing individual class members to relitigate the action without having to show that they are capable of fairly and adequately representing the class. See id. at 1008. These courts also note that "[s]ince a denial of a motion to intervene of right is immediately appealable, the interests of the unnamed class members are adequately protected." Id. at 1008-09. Thus, "the policy underlying class actions under Rule 23 is best served by requiring an unnamed class member in a class action under Rule 23 to move formally to intervene and to be granted intervenor status in order to gain standing to appeal the adequacy of the settlement." Gottlieb, 11 F.3d at 1012. In sum, the formal intervention requirement is predicated upon concerns of adequate representation, avoiding fragmentation of the class, and the existence of adequate procedural protections.

18

Those courts that permit unnamed class members to appeal where they have objected below or unsuccessfully tried to intervene rely upon the rationale that "small claimants who could not litigate their claims absent the class action mechanism could be left with `equally unpalatable alternatives -- accept either nothing at all [by opting out] or a possible unfair settlement [by opting in but lacking standing to appeal].'" Bell Atlantic, 2 F.3d at 1309 (quoting Ace Heating & Plumbing Co. v. Crane Co., 453 F.2d 30, 33 (3d Cir. 1971)).[14] Likewise, these courts have been concerned with collective action problems and "agency costs":

> Frequently, in class or derivative litigation the number of clients is large and the individual injuries small (though, of course, when aggregated they can be and often are quite large). Courts and commentators have long recognized the "agency costs" inherent in class and derivative actions where the client, as principal, is neither well-situated nor adequately motivated to closely monitor and control the attorney, his agent. Shareholders with well-diversified portfolios or small holdings lack the incentive and information to police settlements -- the costs of policing typically outweigh any pro rata benefits to the shareholder.

Id. (internal footnotes omitted). These collective action and agency costs are exacerbated by informational constraints inherent in class actions, and, as a result, "[t]he effort to obtain court approval entails the suspension, if not termination, of hostilities. In assessing settlements of representative actions, judges no longer have the full benefit of the adversarial process." Id. at 1310. Thus, "[t]he parties can be expected to spotlight the proposal's strengths and slight its defects. In such circumstances, objectors play an important role by giving courts access to information on the settlement's merits." Id.[15] In sum,

_____

[14] **Bell Atlantic Corp. v. Bolger**, 2 F.3d 1304 (3d Cir. 1993), addressed the question of appellate standing in a shareholder derivative suit. However, the Third Circuit assumed for the purposes of its analysis that the same "rules apply to objector appellate standing in class and derivative suits." Id. at 1307 n.4.

[15] The court in Bell Atlantic Corp. v. Bolger, 2 F.3d 1304 (3d Cir. 1993), also pointed to the risk that

19

> [g]iven the agency, collective action, and information problems inherent in settlements of derivative litigation, and the broad view of objector standing embodied in Ace , we conclude [that the non-named plaintiff who objected below] had standing to appeal the district court order approving the settlement. <u>Assuring fair and adequate settlements outweighs concerns that non-intervening objectors will render the representative litigation "unwieldy."</u> It is sufficient that [the non-named plaintiff] attended the settlement hearing and voiced before the district court the same objections he now raises before us on appeal.

<u>Id.</u> (emphasis added).

A crucial difference between the approach of the majority of courts, as first articulated in <u>Guthrie</u>, and that of the minority of courts, as articulated in <u>Bell Atlantic</u>, is the way in which the courts balance class management concerns against fairness concerns. A majority of courts require successful intervention below as a prerequisite to appellate standing because they place a greater emphasis on the need for efficiency and effective class management, <u>see Gottlieb</u>, 11 F.3d at 1007 (relying upon the purpose of Rule 23 to "promote the efficient resolution of claims in cases involving multiple parties with similar claims"), whereas a minority of courts place a greater emphasis on the need to ensure the fairness and adequacy of class action settlements, <u>see Bell Atlantic</u>, 2 F.3d at 1309 (expressing concern that collective action and agency costs fail to ensure fair and adequate settlements).

_____

> plaintiffs' counsel and the defendants will structure a settlement such that the plaintiffs' attorneys' fees are disproportionate to any relief obtained for the corporation. Plaintiffs' attorneys and the defendants may settle in a manner adverse to the interests of the plaintiffs by exchanging a low settlement for high fees. Such a risk cautions against creating obstacles to challenging derivative action settlement agreements.

<u>Id.</u> at 1310. In the present case, counsel were compensated on an hourly basis by the Plan and by TCU.

20

We agree with the majority of courts that the need for effective class management and to avoid class fragmentation weighs strongly in favor of limiting the possibility that last-minute "spoilers" who were not entitled to intervene below might unduly delay class settlement on appeal. We fail to see how effective class management can be accomplished if non-named class members who were not entitled to intervene before the district court can nevertheless usurp the role of the class representatives and, in effect, act as intervenors by contesting the merits of the class settlement on appeal.

We also recognize, however, the importance of ensuring that non-named class members can appeal the merits of the class settlement where intervention was wrongfully denied below. With these competing concerns in mind, we believe that the best approach is that articulated by the Sixth Circuit in Shults:

> a non-named class member has standing to appeal a settlement order if he has formally intervened in the action (indeed, non-parties generally obtain such standing upon intervention). However, a non-named party that has not been permitted to intervene may also have standing to bring a direct appeal if a motion to intervene, which is then appealed, should have been granted. A nonnamed party may also have standing to appeal if the district court has otherwise "summoned" him into court. Of course, as the Supreme Court has indicated, "the better practice is . . . to seek intervention for purposes of appeal." Marino, 484 U.S. at 304, 108 S. Ct. at 588. But a mere voluntary appearance to state or file objections is an insufficient basis for standing to appeal.

Shults, 35 F.3d at 1061 (emphasis added). We believe that this approach best balances the need to protect non-named class members against a wrongful denial of intervention below and the need to prevent nonmeritorious or untimely motions for intervention from unduly interfering with or delaying class settlement. We therefore hold that a non-named class member who unsuccessfully moves for intervention below may still have standing to appeal the substance of the class settlement if he was wrongfully denied intervention. But, where, as here, intervention was properly denied, the non-named class member

21

does not have standing to contest the merits of the class settlement on appeal.**16**

The dissent posits that an unnamed class member who objects but fails successfully to intervene below should be able to appeal the approval of a class action settlement. While it is true that the settlement affects the unnamed class members' interests, the purpose of securing class representatives is to ensure that the unnamed class members' interests are adequately protected. If the unnamed class member's interests are not adequately protected by the class representatives, the district court should grant the motion to intervene. Any unnamed class members whose interests were not adequately protected by the class representatives and who filed a motion to intervene that was wrongfully denied will be afforded the opportunity to appeal the class settlement. Thus, our rule strikes the appropriate balance between the dissent's concern over fairness to unnamed class members and concerns over efficiency and effective class management.

Additionally, merely requiring unnamed class members to object to the settlement as a prerequisite to their right to appeal does not adequately protect concerns about efficiency and effective class management because if the district court does not agree with the objections of the unnamed class members, it will proceed to approve the class settlement. Allowing appeals from each unnamed class member after approval of the class settlement implicates the precise management and efficiency concerns with which the class action system is concerned. Indeed, the facts of the present case provide an almost paradigmatic example of the "spoiler" effect that would follow from the minority view espoused by the Second, Third, and Ninth Circuits;

_____

**16** Although the dissent argues that class members have standing to object to the settlement at the district court and that "[i]t is inconsistent with due process to deny the same class member standing to appeal the settlement order after he has exercised his right to object in district court," (Dissent, at 30), our decision does not deny standing to a non-intervenor who seeks to appeal the denial of a right to object to the settlement at the fairness hearing. See supra, note 10 (discussing Devlin's argument that the district court failed to order discovery to resolve his objection at the fairness hearing that his interests were not adequately represented).

22

here, Devlin sat on the sidelines while the class settlement was crafted, despite knowing for months that his interests were at stake. Devlin then objected and sought to intervene at nearly the last moment, at a point and time at which, as the district court recognized, acceptance of his objections "might [have] ma[de] it impossible to achieve any settlement at all no matter how, no matter how much it would be in everybody's interest to achieve it." (J.A. at 2784.) Accordingly, because the district court did not abuse its discretion in denying Devlin's untimely motion for intervention, Devlin does not have standing to challenge the merits of the class settlement on appeal.[17]

---

[17] We note that one of the bases for Devlin's challenge to the class settlement is his assertion that COLA benefits are accrued benefits that could not be eliminated by amendment without prior notice to and approval from the Secretary of Labor. See 29 U.S.C.A. § 1054(g)(1) (West 1999) (providing that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) or 1441 of this title"); 20 U.S.C.A. § 1082(c)(8) (West 1999) (providing that "[n]o amendment described in this paragraph which reduces the accrued benefits of any participant shall take effect unless the plan administrator files a notice with the Secretary notifying him of such amendment and the Secretary has approved such amendment, or, within 90 days after the date on which such notice was filed, failed to disapprove such amendment."). Because the Trustees did not follow this procedure, Devlin asserts that the settlement is void insofar as it is based upon illegal consideration. See Collins v. Seafarer's Pension Trust, 846 F.2d 936, 939 (4th Cir. 1988) ("[T]he failure to give adequate notice of the amendment and thus to trigger the requisite determination by the Secretary vitiates the effectiveness of the amendment.").

Although we do not decide this issue, we note that the nullification of the 1991 Amendment was ultimately not the product of the 1997 Amendment, but rather was the product of the district court's declaration that "[t]he amendment to the Plan . . . providing for an automatic cost of living adjustment effective January 1, 1991 is null and void as of its adoption and of no force or effect." (Supp. J.A. at 948.) In other words, it was not a Plan amendment that revoked the COLA increases, but rather the district court's final order declaring the 1991 Amendment void.

We further note that it is at best unclear whether the 1991 COLA amendment constitutes an accrued benefit for participants such as Devlin who retired prior to the 1991 Amendment. Although the Seventh Circuit in Hickey v. Chicago Truck Drivers, Helpers & Warehouse Workers

23

IV.

Finally, Devlin argues that the district court erred in enjoining him from attacking the settlement in the Southern District of New York because it failed to follow the requirements of Fed. R. Civ. P. 65. Devlin also argues that the district court failed to require the Trustees to post a bond and that it impaired Devlin's right of access to the courts. In addition, Devlin asserts that his conduct in New York did not constitute a collateral attack against the settlement because the New York case did not relate to the proposed settlement. We review a district court's grant of a motion under the All Writs Act for an abuse of discretion. See March v. Kittay, 988 F.2d 498, 500 (4th Cir. 1993).

Under the All Writs Act, 28 U.S.C.A. § 1651(a), a federal court may enjoin parties before it "from attempting to relitigate decided issues and to prevent collateral attack of its judgments."[18] March, 988

_____

Union, 980 F.2d 465 (7th Cir. 1992), concluded that COLA benefits are accrued benefits, id. at 468, it did not address whether COLA benefits are accrued benefits with respect to plan participants who retired prior to the implementation of the COLA benefits. Cf. Isby v. Bayh, 75 F.3d 1191, 1196-97 (7th Cir. 1996) (stating that the court's focus in determining whether to accept a proposed settlement should be "upon the general principles governing approval of class action settlements" and that the court "must not decide unsettled legal questions" (internal quotation marks omitted)); cf. also Flinn v. FMC Corp., 528 F.2d 1169, 1172-73 (4th Cir. 1976) (stating that the trial court should not transform the settlement hearing into "a trial or rehearsal for trial," nor should it "reach any dispositive conclusions on the admittedly unsettled legal issues in the case" (internal quotation marks omitted)).

[18] 28 U.S.C.A. § 1651 provides that

(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

(b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

28 U.S.C.A. § 1651 (West 1994).

24

F.2d at 500. Federal Rule of Civil Procedure 65(d) provides that "[e]very order granting an injunction . . . shall set forth the reasons for its issuance; shall be specific in its terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." Fed. R. Civ. P. 65(d). "These terms are mandatory and must be observed in every instance." Alberti v. Cruise, 383 F.2d 268, 271-72 (4th Cir. 1967)."The specificity provisions of Rule 65(d) are no mere technical requirements." CPC Int'l, Inc. v. Skippy Inc., 214 F.3d 456, 459 (4th Cir. 2000) (internal alterations and quotation marks omitted). Rather, Rule 65(d) "was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood. Id. "Moreover, without specificity, appellate review of an injunctive order is greatly complicated, if not made impossible. Rule 65(d) thus serves the twin purposes of providing fair notice of what an injunction requires and of facilitating appellate review." Id.

In the present case, Devlin filed a motion to alter or amend in the Southern District of New York in which he alleged that the District of Maryland's refusal to allow him to intervene

> constitute[d] extraordinary circumstances that both were clearly erroneous and . . . caused a manifest injustice to plaintiffs (a) by depriving plaintiffs of constitutional rights including due process rights, and the right of access to federal courts . . . and (b) by depriving them of their right to litigate their age discrimination claims before a jury . . . in a court of competent jurisdiction that is accessible and available to them, notwithstanding their limited financial resources, and by counsel of their own choosing.

(Supp. J.A. at 1040-41.) The district court granted the Trustee's motion under the All Writs Act, ordering Devlin"to dismiss the pending action in the Southern District of New York" and enjoining Devlin and "all members of the defendant class . . . from making any filing in any forum against any person, including counsel in this case or their law firms, that raises issues encompassed within the settlement of this action or that directly or collaterally attacks the settle-

25

ment of this matter, except in this Court or on appeal from the Orders of this Court." (Supp. J.A. at 129-30.)

Devlin argues that the district court's All Writs Act injunction fails to satisfy Rule 65 because the injunction does not adequately set forth the reasons for its issuance.[19] We must determine, therefore, whether Rule 65 applies to an All Writs Act injunction issued in aid of the district court's jurisdiction. We conclude that it does; indeed, we have previously analyzed the two together in affirming a district court's issuance of an injunction, although we have not explicitly held that an All Writs Act injunction is invalid where it fails to satisfy Rule 65. See March, 988 F.2d at 500 ("[T]he district judge did not abuse her discretion, but rather acted within her authority under the All Writs Act . . ., as well as, the Federal Rules of Civil Procedure, Rule 65."); see also Florida Med. Assoc. v. U.S. Dept. of Health, Educ. &

_____

[19] Relying upon Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411 (4th Cir. 1999), Devlin also argues that the injunction is defective because Rule 65(c) requires that the district court fix a bond when it grants an injunction. See id. at 421 (requiring that the "district court . . . fix a bond whenever it grants a preliminary injunction or restraining order"). The district court did not require the Trustees to post a bond of any amount prior to issuing the injunction. However, the structure and plain text of Rule 65 make clear that the district court was not required to order the Trustees to post a bond pursuant to Rule 65(c). Although the title of Rule 65 applies generally to all injunctions, Rule 65(c) only applies to "restraining order[s]" and "preliminary injunction[s]." Compare Fed. R. Civ. P. 65(c) (providing that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant" (emphasis added)) with Fed. R. Civ. P. 65(d) ("Every order granting an injunction and every restraining order shall set forth the reasons for its issuance . . . ." (emphasis added)). Because Rule 65 clearly differentiates between preliminary injunctions and injunctions for purposes of Rule 65(c), and because this injunction does not qualify as a preliminary injunction, we conclude that the injunction is not subject to Rule 65(c)'s bond requirement. We further note if the district court were required to comply with Rule 65(c)'s bond requirement as a prerequisite to an All Writs Act injunction, its ability to protect its own jurisdiction would be tied to a party's ability to post a bond. As a result, the district court would be rendered powerless to protect its own jurisdiction where the party is unable to post a bond.

26

<u>Welfare</u>, 601 F.2d 199, 202 (5th Cir. 1979) (stating that "the All Writs Act does not free a district court from the restraints of Rule 65."); <u>Wood v. Santa Barbara Chamber of Commerce</u>, 705 F.2d 1515, 1525 (9th Cir. 1983) (finding that injunction against relitigation, issued under the All Writs Act, "is specific enough to satisfy the requirements of Federal Rule of Civil Procedure 65(d)"). <u>But see In re Johns-Manville Corp.</u>, 27 F.3d 48, 49 (2d Cir. 1994); <u>In re Baldwin-United Corp.</u>, 770 F.2d 328, 338 (2d Cir. 1985) ("While the issuance of the injunction here did not comply with the requirements that [Rule 65] prescribes for the issuance of preliminary injunctions, this is not a fatal defect."). The Fifth Circuit in <u>Florida Medical Association</u> explicitly concluded that Rule 65 applies to All Writs Act injunctions, reasoning that "[w]hile the All Writs Act empowers a district court to fashion extraordinary remedies when the need arises, it does not authorize a district court to promulgate an ad hoc procedural code whenever compliance with the Rules proves inconvenient. . . . Rule 65 provides sufficient protection for the jurisdiction of the district court." <u>Florida Med. Assoc.</u>, 601 F.2d at 202. In other words, the Fifth Circuit saw no reason to distinguish between All Writs Act injunctions and other injunctions that must comply with Rule 65. We agree. Notably, we have previously stated that Rule 65(d)"applies generally to equitable decrees compelling obedience under the threat of contempt." <u>See Skippy</u>, 214 F.3d at 459 (internal quotation marks and alterations omitted). This broad language informs our conclusion that Rule 65 applies to injunctions issued under the All Writs Act because an All Writs Act injunction, like any other injunction, compels obedience under the threat of contempt. An All Writs Act injunction likewise implicates the same twin purposes of providing fair notice of what an injunction requires and of facilitating appellate review. <u>Id.</u>

Having concluded that Rule 65 applies to All Writs Act injunctions, we next must determine whether the district court's injunction in this case complies with Rule 65. Although we are reluctant to impose unnecessary obstacles on the district court's ability to decisively protect its jurisdiction from collateral attack, particularly where, as here, it is clear that Devlin was seeking to undermine the district court's approval of the class settlement, we nevertheless conclude that the district court's injunction fails to satisfy Rule 65 because the injunction fails to set forth adequate reasons for its issu-

27

ance.[20] We therefore remand the district court's injunction under the All Writs Act for further clarification.[21]

V.

In conclusion, the district court did not abuse its discretion in denying Devlin's motion to intervene, and, thus, Devlin does not have standing to contest the merits of the class settlement on appeal. We reverse and remand the district court's All Writs Act injunction prohibiting Devlin from attacking the settlement in another jurisdiction because the district court did not adequately set forth its reasons for the injunction.

<u>AFFIRMED IN PART, REVERSED</u>
<u>IN PART, AND REMANDED</u>

MICHAEL, Circuit Judge, concurring in part and concurring in the judgment:

The only fair rule gives the right of appeal to an unnamed class member who objects to a settlement in district court. This rule, which

---

[20] The district court relied upon the conclusory statement that it is "upon finding that an injunction is necessary and appropriate in aid of this Court's jurisdiction." (Supp. J.A. at 129.) The district court did orally set forth its reasons at the hearing. (Supp. J.A. at 938-41 ("The case in New York right now is absolutely an attack on this litigation and the settlement. It is not simply a derivative case seeking to increase assets of the plan.").)

[21] Devlin also argues that the district court improperly impaired his access to the courts. We note, however, that the injunction explicitly leaves Devlin the option of pursuing an action in the District of Maryland, and he is not precluded from litigating in any court any matter not connected with this litigation. Thus, we fail to see how the district court has improperly impaired Devlin's access to the court system. Likewise, although Devlin argues that his post-injunction motion, filed five days after the injunction, was not an attack on the settlement, his post-injunction motion clearly invites the Southern District of New York to undermine the basis for the District of Maryland's approval of the settlement. We have no difficulty concluding that Devlin's motion was an attack on the District of Maryland's judgment.

28

is steeped in tradition and followed in three of our circuits, does not burden the class action system. I therefore respectfully disagree with the majority's decision, stated in part III of its opinion, that an objecting class member who does not intervene lacks standing to appeal a settlement order. Nevertheless, because I otherwise agree with the majority, I concur in the judgment and in parts I, II, and IV of the court's opinion.

I.

An unnamed class member has the right to object in district court to a proposed class action settlement. See Gould v. Alleco, 883 F.2d 281, 284 (4th Cir. 1989); 7B Charles Alan Wright et al., Federal Practice and Procedure § 1797, at 376 (2d ed. 1998). Typically, the unnamed class member may file written objections and appear at the fairness hearing to contest the reasonableness of the proposed settlement. See 2 Herbert Newberg & Alba Conte, Newberg on Class Actions § 11.56, at 11-139 (3d ed. 1992). Although a district court has considerable leeway in controlling the course and scope of fairness proceedings, an objector is generally entitled "to be heard, to examine witnesses and to submit evidence on the fairness of the settlement." Flinn v. FMC Corp., 528 F.2d 1169, 1173 (4th Cir. 1975). The rights of an unnamed class member who objects to a settlement should not be cut off as he walks out the door of the district court. Indeed, better reasoned precedent holds that an unnamed, objecting class member has standing to appeal a district court order approving a class action settlement. See In re PaineWebber, Inc. Ltd. P'ships Litig., 94 F.3d 49 (2d Cir. 1996); Bell Atl. Corp. v. Bolger, 2 F.3d 1304 (3d Cir. 1993); Marshall v. Holiday Magic, Inc., 550 F.2d 1173 (9th Cir. 1977); see also 7B Wright et al., supra, § 1797, at 360-61 ("Of course, if the class member appears in response to the notice and puts forth his objections, he can attack the dismissal or compromise [of the class action] on appeal from the entry of the final judgment."). The rule that allows an unnamed class member to appeal a settlement order is rooted in early American equity jurisprudence. Under the old equity rules, cases could be brought by representative parties: when "parties are exceedingly numerous, and it would be impracticable to join them . . . the court will not insist upon their being made parties; but will dispense with them, and proceed to a decree." Joseph Story, Commentaries on Equity Pleadings § 94 (10th ed. 1892). And, those

29

"who are not directly made parties" have the right to "come in under the decree, and take the benefit of it, or show it to be erroneous, or entitle themselves to a rehearing." Id.§ 96. In other words, if an unnamed party was bound by the decree, he had the right to take an appeal. Today, it is still fair and efficient to allow an unnamed class member to appeal an order approving a class settlement, as long as he has presented his objections in district court.

First, the unnamed class member's legal rights are affected by the order approving the settlement. This gives the class member standing to object to the settlement in district court. See Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1153 (8th Cir. 1999) (holding that an unnamed class member has a due process right to object at the fairness hearing). It is inconsistent with due process to deny the same class member standing to appeal the settlement order after he has exercised his right to object in district court. Cf. Philips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985) (noting that an unnamed class member has a due process right "to be heard and participate in [class action] litigation" in state court).

Second, the unnamed class member, as a prerequisite for appeal, must state his objections to the settlement in district court. The class representatives and the defendants thus face potential appeals only from those unnamed class members whose objections are denied in district court. In most instances an objector will have little incentive to appeal because the projected expenses will outweigh the potential for convincing the appeals court that the district court abused its discretion in approving a settlement after considering the objector's concerns.

Third, affording unnamed class member-objectors the right to appeal serves to encourage fair settlements in class action cases. As the Third Circuit has said, class actions present the risk that

> [p]laintiffs' attorneys and the defendants may settle in a manner adverse to the interests of the plaintiffs by exchanging a low settlement for high fees. . . . The effort to obtain court approval entails the suspension, if not termination, of hostilities. In assessing settlements of representative actions, judges no longer have the full benefit of the adversarial pro-

30

cess. In seeking court approval of their settlement proposal, plaintiffs' attorneys' and the defendants' interests coalesce and mutual interest may result in mutual indulgence. The parties can be expected to spotlight the proposal's strengths and slight its defects. In such circumstances, objectors play an important role by giving courts access to information on the settlement's merits.

Bell Atl. v. Bolger, 2 F.2d 1304, 1310 (3d Cir. 1993) (footnote and citations omitted). Moreover, when everyone involved-- the class representatives, the defendants, the lawyers, and even the trial judge -- knows that an objector has the right to appeal, it stands to reason that a settlement proposal will be designed and scrutinized with more care.

Fourth, we have not been presented with any evidence that objector appeals have gummed up the works in the circuits (the Second, Third, and Ninth) where they are expressly allowed. Class action litigation is plenteous in the district courts in these circuits, and there is no indication that the circuit courts have been faced with an unmanageable avalanche of appeals by objectors to class action settlements. Nor is there any indication that plaintiffs are reluctant to become class representatives or that plaintiffs' lawyers are reluctant to file class actions because unnamed, objecting class members have the right to appeal. In short, the objector appeal right does not appear to be causing the class management and fragmentation problems that worry the majority.

Fifth, the rule authorizing objector appeals actually promotes efficiency in the class action system. For example, the unnamed Rule 23(b)(3) class member who knows he has the right to appeal is less likely to opt out of the class because he will have the opportunity, after objecting, to appeal any settlement order he regards as unfair. In addition, the availability of appellate review of the denial of a class member's objections will lessen the possibility of collateral attacks on settlement orders. See, e.g., Walker v. City of Mesquite, 858 F.2d 1071, 1075 (5th Cir. 1988) (recognizing that unnamed class members may "challenge the adequacy of class representation . . . by filing a separate lawsuit for that purpose"). With the right to appeal in place, a disgruntled class member will have more incentive to pursue his

31

objections in the core action instead of waiting to launch a collateral attack on the judgment in separate litigation.

Finally, the majority's approach -- requiring an unnamed class member to formally intervene before he can appeal -- is unduly burdensome to class members and creates its own inefficiencies. As the majority notes, an intervention application must be timely. <u>See</u> Fed. R. Civ. P. 24(a). Yet the majority fails to recognize that most unnamed class members receive very little information about their case as it goes along. <u>See</u> Jonathan R. Macey & Geoffrey P. Miller, <u>The Plaintiffs' Attorney's Role in Class Action and Derivative Litigation: Economic Analysis and Recommendations for Reform</u>, 58 U. Chi. L. Rev. 1, 20 (1991). Indeed, most unnamed class members do not realize that they might have an objection until they receive notice of the fairness hearing at the end of the litigation. This lack of information makes it difficult for unnamed class members to make timely decisions to seek intervention in an effort to protect their interests. The intervention requirement also has the potential to waste judicial resources, and it will not lead to quicker resolution of cases. The intervention requirement will place more work on the district courts who will have to deal with motions to intervene in addition to the fairness proceedings. Of course, if intervention motions are denied, the unnamed class members will be able to appeal the denials. The intervention alternative adopted by the majority therefore does nothing to take care of its concern about "delay[ing] class settlement on appeal." <u>Ante</u> at 21. At bottom, the majority's approach forces costly intervention motions, creates more work for the district courts, produces about the same amount of work for the court of appeals, and delays final resolution without providing any meaningful benefit. On the other hand, a rule that allows objecting, unnamed class members to appeal keeps the focus strictly on the merits, that is, whether the settlement is fair and reasonable.

I firmly but respectfully disagree with the majority's intervention requirement that denies appeal rights to unnamed class members. Giving unnamed, objecting class members the right to appellate review is much better insurance against unfair class action settlements. The latter approach appears to be working in three of our busiest circuits, and it will work here, too.

32

## II.

I now turn to how I would deal with Robert Devlin's appeal, which is before us. The district court denied his motion to intervene as untimely, and I (like the majority) would affirm that ruling. I, of course, disagree with the majority's decision that Devlin lacks standing to appeal the order approving the settlement agreement. Because Devlin filed objections to the proposed settlement in the fairness proceedings, I would hold that he has standing to appeal. Nevertheless, after considering the merits, I would affirm the district court's order approving the settlement. As the majority points out, the "district court thoroughly considered the fairness and adequacy of the settlement," ante at 14 n.10, giving careful consideration to Devlin's objections. Devlin objected to the settlement because it nullified the 1991 COLA amendment. The COLA amendment had the effect of substantially increasing benefits to participants who retired before January 1, 1991. Because the removal of the COLA reduced the retirement benefits of pre-1991 retirees, Devlin argued that the settlement was unfair in that it adversely affected the pre-1991 retiree subclass. The district court found, however, that restoration of the COLA would jeopardize the viability of the retirement plan and would compromise the interests of the pre-1991 retiree subclass and the active subclass. The court concluded that Devlin's position "was absolutely destructive of everybody's rights and interests" and would "steer the ship onto the rocks." A review of the record of the fairness proceedings reveals that the district court fully analyzed the proposed settlement for fairness and adequacy in accordance with the Jiffy Lube factors. See In re Jiffy Lube Sec. Litig., 927 F.2d 155, 159 (4th Cir. 1991). The district court's decision to approve the settlement was well within its discretion.

33