In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2132

Lisa Ann Feltner,

Plaintiff,

v.

Title Search Company,

Defendant-Appellant,

and

1st Source Bank,

Garnishee-Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 95-CV-217--Robert L. Miller, Jr., Judge.

Argued January 23, 2002--Decided March 12, 2002


  Before Bauer, Coffey and Evans, Circuit
Judges.

  Bauer, Circuit Judge.  Title Search
Company appeals the district court's
entry of a contempt and sanctions order
after finding that Title Search violated
an injunction preventing relitigation in
state court of certain issues previously
decided in federal court. Because the
district court was well within its
discretion to hold Title Search in
contempt and sanction it, we affirm the
judgment of the district court.

BACKGROUND

  Lisa Ann Feltner sued Title Search
Company for sexual harassment and
discrimination in 1995, under 42 U.S.C.
sec. 2000(e) et seq. A trial was held in
1996, and a jury awarded Feltner damages,
plus attorney's fees totaling
approximately $93,000. Title Search
appealed, and we affirmed the judgment.
Despite losing the case, Title Search did
not pay, forcing Feltner to seek a
garnishment order. Garnishment
proceedings were commenced in April 1997,

and in the course of those proceedings Feltner discovered Title Search's accounts at 1st Source Bank.

The district court notified Title Search of the impending garnishment of the 1st Source Bank accounts and gave Title Search an opportunity to contest the garnishment at a hearing. Title Search could have avoided the garnishment by demonstrating that funds in the accounts did not belong to it, but Title Search did not contest the garnishment. The district court later set another hearing and again sent notice to Title Search, yet again Title Search failed to appear. Thereafter, in September of 1998, a garnishment order was entered, and in compliance with that order 1st Source Bank disbursed $93,165.65 to Feltner from Title Search accounts numbers 123-224-8 and 8112232248.

On November 6, 1998, well after it should have contested the issue, Title Search filed a motion for reconsideration of the garnishment order claiming that the funds in account 123-224-8 were part of a trust/escrow account containing funds that did not belong to Title Search. The motion was denied, and Title Search did not appeal the ruling.

Then on February 4, 2000, Title Search filed suit in Indiana state court alleging breach of contract because 1st Source Bank improperly paid out funds, which did not belong to Title Search. After receiving notice of the state court suit, 1st Source Bank returned to federal court and moved to stay the state court proceedings. After briefing and oral argument, the district court granted the injunction prohibiting Title Search from relitigating in state court the issues which were already decided in federal court. The district court found that the state court action was an attempt by Title Search to relitigate the propriety of the garnishment order and challenge the district court's determination that Title Search owned the funds in the account. The district court found that the stay was necessary to protect its previous rulings. See the All-Writs Act, 28 U.S.C. sec. 1651; the Anti-Injunction Act, 28 U.S.C. sec. 2283. However, the district court did note that whether or not 1st Source Bank breached any contractual duties was a question not

previously litigated and that issue would not be affected by the stay. Title Search did not appeal the entry of the injunction.

Armed with the injunction, 1st Source Bank filed for summary judgment in the state court proceedings, and Title Search responded arguing that the account was an escrow account. 1st Source Bank reappeared in federal court requesting that Title Search be held in contempt for violating the injunction. The magistrate judge issued an order to show cause, and Title Search filed a memorandum in opposition to the contempt petition. The magistrate judge recommended that Title Search be found in contempt and sanctioned in the amount of $9,121.15. The district court adopted the magistrate judge's recommendations and granted the petition for contempt on March 29, 2001. The district court also ordered Title Search to file a memorandum in state court withdrawing all of its arguments which violated the injunction. Title Search now appeals that ruling.

ANALYSIS

A.  Issues on Appeal

On June 16, 2000, the district court enjoined Title Search from relitigating issues in Indiana state court which were previously litigated in federal court. Title Search did not appeal the entry of the injunction. Nevertheless, in its briefs and at oral argument, Title Search argued that the injunction does not fall within any of the statutory exceptions contained in the Anti-Injunction Act. Title Search also attempts to shoehorn this issue into the contempt and sanctions appeal by arguing it did not violate the injunction because the issue of ownership of the funds was not litigated in federal court. We do not consider any of Title Search's arguments which attack the scope of the injunction because Title Search never appealed the entry of the injunction on June 16, 2000. Cf. Szabo v. U.S. Marine Corp., 819 F.2d 714, 718 (7th Cir. 1987) ("Not having appealed from the grant of the injunction, U.S. Marine cannot argue that it is too vague to be enforced . . . ."). The only issue before this court is whether the district court abused its discretion in entering the contempt and

sanctions order on March 29, 2001.

B.  Contempt & Sanctions Order

It is well established that the decision by a district court to enter a finding of civil contempt is discretionary and we review it only to determine if there was an abuse of discretion or its entry was clearly erroneous. Jones v. Lincoln Elec. Co., 188 F.3d 709, 737 (7th Cir. 1999); Stoler and Co. v. Able, 870 F.2d 1158, 1163 (7th Cir. 1989); Jewel Tea Co. v. Kraus, 204 F.2d 549, 551 (7th Cir. 1953). Contempt proceedings are generally classified into two categories, coercive and remedial. Jones, 188 F.3d at 738. Coercive sanctions are used to induce compliance with court orders in the future, while remedial sanctions compensate an aggrieved party for losses sustained for past disobedience of a court's order. Id. The district court's order in this case contains a remedial monetary sanction for violation of the injunction, and what could be classified as both a remedial and coercive sanction to remove certain arguments from motions filed in state court. The sanction, regardless of its nature, "must be predicated on a violation of an explicit court order." Id.

Title Search contends that it did not violate the injunction with respect to relitigation of the issue of ownership and nature of the accounts. To hold a party in contempt, "the court must be able to point to a decree from the court which 'set[s] forth in specific detail an unequivocal command' which the party in contempt violated." Ferrell v. Pierce, Jr., 785 F.2d 1372, 1378 (7th Cir. 1986) (per curiam) (quoting H.K. Porter Co. v. National Friction Prod., 568 F.2d 24, 27 (7th Cir. 1977)). The district court's June 16, 2000 injunction order provides, in relevant part:

1. Title Search is prohibited from relitigating in the related state-court action those allegations and/or issues contained in Paragraphs 5, 6, 7, 8, and 11 of its state-court complaint . . . .

2. Title Search is prohibited from litigating in the related state-court action the issue of whether it was the sole owner of the funds contained in Account No. 123-224-8 with 1st Source

Bank. Whether the funds belonged to Title Search or its customers is a question that has already been determined as part of its garnishment proceeding, that took place between April 4, 1997 and November 10, 1998. The court determined that Title Search was the sole owner of the funds, and, therefore, the issue shall not be tried again.

The district court's contempt and sanctions order "pointed" to the injunction order, and specifically found: "Title Search has in three separate instances continued to allege that the bank account at issue was an 'escrow' account, in direct violation of this court's order."

   Throughout its reply to 1st Source Bank's motion for summary judgment in the state action Title Search asserted that the account in question was an escrow account and that the funds did not belong to Title Search. For example, on page five of that motion, Title Search stated: "[t]here exists a genuine issue of fact as to the type of account which Title Search held with 1st Source." And on page six of that motion Title Search blatantly stated: "regardless of the district court's adjudication of ownership of the garnished funds, Title Search has alleged that it had an escrow deposit agreement with 1st Source regarding these accounts." (emphasis in original). In support, Title Search submitted the "Verified Statement of M. Terese Partyka," President of Title Search, who stated that there was an understanding between 1st Source and Title Search that the account was an escrow account./1 The reply brief is rife with other examples, which the district court quoted and compared with Title Search's state court complaint and the injunction for more than five pages in its sanctions order.

   In the contempt and sanctions order, the district court quoted the "unequivocal commands" in the injunction and compared those commands with the arguments asserted in Title Search's motions. Notwithstanding Title Search's assertions to the contrary, the issue of ownership was clearly decided by the district court and Title Search's attempt to relitigate it in state court violated the injunction. The injunction expressly

prohibited relitigation of this issue, and the district court was well within its discretion to find Title Search in contempt of its order and sanction Title Search. The judgment of the district court is therefore Affirmed.

FOOTNOTE

/1 And at oral argument, counsel for Title Search again asserted that there was an escrow agreement, though when pressed counsel could not direct the panel to any page in the record to verify this contention. We reviewed the record in search of this supposed agreement, however, as Ms. Partyka stated in her verified statement, the escrow agreement with 1st Source is nowhere to be found even after a "diligent" search of Title Search's records.