**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
### FOR THE FOURTH CIRCUIT

ROBERT A. SCARDELLETTI; FRANK
FERLIN, JR.; JOEL PARKER; DON
BUJOLD, as Trustees of the
Transportation Communications
International Union Staff Retirement
Plan,

          *Plaintiffs-Appellees,*

          v.

FREDERICK RINCKWITZ, individually
and as representative of all of the
members of the class,

          *Defendant-Appellant,*

GEORGE THOMAS DEBARR,
Individually and as representative of
a class of all persons similarly
situated; ANTHONY SANTORO, SR.,

          *Defendants-Appellees,*

THOMAS J. HEWSON,

          *Party in Interest-Appellant,*

          and

DONALD A. BOBO; R. I. KILROY;
F. T. LYNCH; FRANK MAZUR;
ANDREW HAGAN,

          *Defendants,*

          v.

No. 02-1013

ROBERT J. DEVLIN; RETIRED
EMPLOYEES PROTECTIVE ASSOCIATION,
                    *Movants-Appellants,*

                    and

A. MEADERS; JAMES H. GROSKOPF;
THOMAS C. ROBINSON; DOYLE W.
BEAT; MIRIAM E. PARRISH; ROBERT
A. PARRISH; DESMOND FRASER; JAMES
L. BAILEY, DOROTHY DEERWESTER;
CLAY B. WOLFE; KENNETH B. LANE;
BRIAN A. JONES; CHARLES O. SWASY,
                    *Parties in Interest.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, District Judge.
(CA-97-3464-JFM)

Argued: May 9, 2003

Decided: July 3, 2003

Before WILLIAMS, MICHAEL, and SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Arthur McKee Wisehart, WISEHART & KOCH, New
York, New York, for Appellants. Carmen Rose Parcelli, GUER-
RIERI, EDMOND & CLAYMAN, P.C., Washington, D.C., for
Appellees. **ON BRIEF:** John A. Edmond, Jeffrey A. Bartos, GUER-

RIERI, EDMOND & CLAYMAN, P.C., Washington, D.C.; William F. Hanrahan, Lonie Anne Hassel, GROOM LAW GROUP, CHARTERED, Washington, D.C.; Barbara Kraft, BEINS, BODLEY, AXELROD & KRAFT, Washington, D.C.; Kenneth M. Johnson, TUGGLE, DUGGINS & MESCHAN, P.A., Greensboro, North Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Robert J. Devlin appeals from the district court's order enjoining him from pursuing litigation in other courts collaterally attacking the settlement of this class action. Devlin contends that the district court's injunction fails to satisfy the requirements of the All Writs Act, 28 U.S.C. § 1651(a), and Fed. R. Civ. P. 65(d). We find no error in the district court's resolution of this matter, and we affirm.

### I.

This dispute arose in the fall of 1997, when the trustees of the Transportation Communications International Union amended the union's Staff Retirement Plan (the "Plan") to rescind a 1991 cost-of-living adjustment (the "1991 COLA") in its entirety.[1] The 1991 COLA increased participants' pensions by an amount equal to the increase in the COLA index for every three years following a participant's retirement.

---

[1]A more complete statement of the facts underlying this dispute may be found in *Scardelletti v. DeBarr*, 265 F.3d 195 (4th Cir. 2001) (*Scardelletti I*), *rev'd on other grounds sub nom. Devlin v. Scardelletti*, 536 U.S. 1 (2002).

The trustees — who were elected after the 1991 COLA was enacted — later learned that the decision to enact the 1991 COLA was based upon an incorrect valuation of the Plan's liabilities. (The 1991 COLA increased the Plan's liabilities by about $20 million.) Rather than rescinding the 1991 COLA outright, the trustees amended the Plan to freeze the COLA with respect to active employees only; thus, the 1991 COLA remained in place for participants who had already retired when the COLA took effect.

The trustees sued their predecessors for breach of fiduciary duty and sought a declaration that the 1991 COLA was void. The district court ruled in favor of the trustees and declared that the 1991 COLA was void as to all retirees, including pre-1991 retirees. With this ruling in hand, the trustees amended the Plan again in 1997 to rescind the 1991 COLA in its entirety.

The trustees promptly filed this class action in an attempt to forestall likely challenges to the rescission of the 1991 COLA. The trustees sought a declaration that the 1997 rescission of the 1991 COLA was appropriate and binding on all Plan participants or, alternatively, that the 1991 COLA was void as to all Plan participants. Although Devlin — who was retired when the 1991 COLA took effect — was initially named as a representative for the Retiree Subclass, he declined to accept the position. Another class representative was substituted for Devlin.

In May 1999, the trustees and the named defendants reached a settlement that called for the district court to enter a consent order declaring the 1991 COLA void from its inception. The settlement also provided for a release of all claims "concerning the 1991 COLA Amendment and any and all actions and recommendations taken up through the effective date of [the settlement] concerning the 1991 COLA Amendment or directly related to its effects." In addition, the settlement provided that any disputes concerning the settlement were subject to the exclusive jurisdiction of the United States District Court for the District of Maryland.

After the parties reached this settlement, Devlin moved to intervene in the case. The motion was denied as untimely. Nevertheless, the district court heard Devlin's objections to the settlement at a fairness

hearing conducted in November 1999. The court rejected Devlin's arguments and approved the settlement.

The district court's approval of the settlement did not deter Devlin from pursuing similar litigation in the Southern District of New York. Back in 1995 — while the trustees' initial lawsuit against their predecessors was pending in the district court — Devlin filed two lawsuits in the United States District Court for the Southern District of New York relating to death benefits and medical benefits under the Plan. *See Devlin v. Transportation Communications Int'l Union*, No. 95 Civ. 0742 (S.D.N.Y. 1995) ("*Devlin I*"); *Devlin v. Transportation Communications Int'l Union*, No. 95 Civ. 10838 ("*Devlin II*") (S.D.N.Y. 1995). These cases were later consolidated in the Southern District of New York.

Significantly, *Devlin II* included a claim that the trustees' then-intention to rescind the 1991 COLA was motivated by discriminatory animus against retirees. Once the trustees enacted the 1997 amendment rescinding the COLA in its entirety, Devlin moved in *Devlin II* for a preliminary injunction to restore the COLA. The Southern District of New York denied this request, and the Second Circuit affirmed. *Devlin v. Transportation Communications Int'l Union*, 175 F.3d 121, 131-32 (2d Cir. 1999). According to the Second Circuit, "The exact COLA issue that [Devlin is] pursuing in *Devlin II* is being addressed by the district court in Maryland. . . . It seems eminently sensible that the Maryland district court should resolve fully the COLA amendment issue, given that that court already ruled that the amendment could be repealed as to those who retired prior to 1991, and that court is already entertaining a suit in which the legality of such a repeal is at issue." *Id.* at 132.

On remand from the Second Circuit (certain non-COLA issues were sent back to the Southern District of New York), Devlin filed an amended complaint in the consolidated cases to assert the very same COLA claims that were previously rejected. Devlin's new complaint sought a declaration that "the automatic Cost of Living Adjustment for the Retirement Plan must be retained," as well as restitution for "[a]ll Cost of Living Adjustments withheld." He requested that the court adopt findings that "the entire proceeding in Maryland" had

been "tainted." The Southern District of New York denied Devlin's motion for leave to amend his complaint.

After the Maryland district court approved the settlement in this case, Devlin filed his third lawsuit in the Southern District of New York. *Devlin v. Scardelletti*, No. 00 Civ. 0043 (S.D.N.Y. 1999) ("*Devlin III*"). The complaint in *Devlin III* alleged that the trustees' prosecution of this action in Maryland amounted to a breach of fiduciary duty and that the settlement was procured by collusion. Devlin sought declaratory relief and compensatory damages relating to the rescission of the 1991 COLA.

In response to the filing of *Devlin III*, the trustees moved the Maryland district court for an injunction under the All Writs Act to stop Devlin's continued attacks on the settlement. The district court initially granted the motion in March 2000, ordering Devlin to dismiss *Devlin III* and enjoining him "from making any filing in any forum against any person, including counsel in this case or their law firms, that raises issues encompassed within the settlement of this action or that directly or collaterally attacks the settlement of this matter, except in this Court or on appeal from Orders of this Court."

Devlin appealed to this Court, challenging the district court's (1) denial of his motion to intervene, (2) approval of the settlement, and (3) entry of the All Writs Act injunction. We affirmed the district court's denial of the motion to intervene as untimely, and we further held that Devlin lacked standing to challenge the fairness of the settlement. *Scardelletti I*, 265 F.3d at 202-10.[2] With respect to the All Writs Act injunction, we rejected Devlin's assertion that he had been denied access to the courts. *Id.* at 213 n.21. Nevertheless, we concluded that the district court's injunction failed to comply with the

---

[2]The Supreme Court of the United States granted a writ of certiorari on the standing issue and held that an absent class member who objects to a settlement prior to its approval may appeal from the judgment approving that settlement. *Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002). On remand, we considered Devlin's objections to the settlement on their merits and affirmed the district court's approval of the settlement. *Scardelletti v. DeBarr*, 43 Fed. Appx. 525, 528-29 (4th Cir. 2002) (unpublished) (*Scardelletti II*).

requirement in Rule 65 that an order granting an injunction must state the reasons for issuance of the injunction. *Id.* at 212-13. Although we were "reluctant" to impose any unnecessary burden on the district court's ability to protect its judgment from collateral attack, we remanded the case for "clarification" as to the reasons supporting the injunction.

On remand, the district court gave the parties another opportunity to be heard on the injunction issue. The trustees filed a memorandum in support of the injunction, incorporating by reference the evidentiary materials they filed in support of the first injunction. Devlin responded by filing an affidavit with exhibits. After considering these additional materials, the district court reissued its All Writs Act injunction in November 2001, explaining its reasons as follows:

> The reason for my issuance of the injunction is that Robert Devlin has, by his pattern of conduct, demonstrated that unless he is enjoined, he will institute litigation in other districts to undermine the class action settlement this court has approved (a ruling that has been affirmed by the Fourth Circuit). This pattern is evidenced by other cases that Devlin filed both before and after the settlement agreement was approved while this action was pending. After [the court] ordered rescission of the 1991 COLA, Devlin filed two actions in the Southern District of New York, seeking a preliminary injunction to restore the COLA. . . . Thereafter, Devlin sought to amend his complaint in the New York actions to reassert the same COLA claims previously raised and rejected. . . .

> Notwithstanding my approval of the settlement agreement, while the approval was pending, Devlin instituted another action in the Southern District of New York alleging that the prosecution of the present suit by the Trustees was a breach of their fiduciary duties and that the settlement of this litigation was the product of collusion. Self-evidently, the institution of that action constituted an attack upon my approval of the settlement agreement and was an attempt to circumvent the jurisdiction not only of this court but also of

the Fourth Circuit in which the appeal of my rulings was to be heard.

It was against the background of these lawsuits that on March 15, 2000, I entered an injunction requiring Devlin to dismiss the breach of fiduciary [duty] complaint in the Southern District of New York. Even then, Devlin did not comply with the injunction but instead moved for reconsideration of the Southern District's decision in the original New York actions denying leave to file an amended complaint. . . .

. . . Here, Devlin's actions clearly were an attempt to relitigate issues I had decided and to collaterally attack my rulings, including my approval of the settlement agreement. Nothing short of an injunction (and, as it turned out, the threat of the imposition of contempt sanctions) deterred him from his conduct. Moreover, he suffered no cognizable harm as the result of the issuance of the injunction since . . . this court is the only appropriate forum for him to challenge, directly or indirectly, the class action settlement agreement.

This appeal followed.

## II.

We review the district court's entry of an injunction under the All Writs Act for an abuse of discretion. *Scardelletti I*, 265 F.3d at 210; *In re March*, 988 F.2d 498, 500 (4th Cir. 1993). Devlin challenges both the propriety of an injunction under the Act and the form of the injunction under Fed. R. Civ. P. 65. We find the district court's injunction sufficient in both respects.

## A.

The All Writs Act authorizes a federal court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Act empowers a federal court to "issue such commands . . . as may

be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *Pennsylvania Bureau of Corr. v. United States Marshals Serv.*, 474 U.S. 34, 40 (1985) (internal quotations omitted). We have previously noted that a district court may, consistent with the Act, "enjoin parties before it from attempting to relitigate decided issues and to prevent collateral attack of its judgments." *In re March*, 988 F.2d at 500.[3]

This case presents a situation similar to that in *In re American Honda Motor Company, Inc. Dealerships Relations Litigation*, 315 F.3d 417 (4th Cir. 2003). The district court in that case entered an injunction forbidding the plaintiffs from enforcing a favorable arbitration award, where that award resulted from the plaintiffs' arguing to

---

[3]Contrary to Devlin's contention on appeal, this All Writs Act injunction is not subject to the four-factor balancing test ordinarily applicable to preliminary injunctions. *Cf. Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 196 (4th Cir. 1977) (stating that "the trial court standard for interlocutory injunctive relief is the balance-of-hardship test"). In the prior appeal, we characterized the district court's injunction as a permanent injunction, not a preliminary injunction. *Scardelletti I*, 265 F.3d at 211 n.19. Indeed, there is nothing preliminary about the district court's order at all. A permanent injunction is proper if it is necessary to protect the court's judgment against likely collateral attack. *See In re American Honda Motor Co., Inc. Dealerships Relations Litig.*, 315 F.3d 417, 437-38 (4th Cir. 2003); *In re March*, 988 F.2d at 500.

Devlin's contention that the district court failed to give him a hearing before entering the injunction is meritless. Assuming that Devlin adequately presented this issue on appeal, the record plainly shows that the district court accepted briefs and evidentiary submissions and conducted a live hearing before entering the first All Writs Act injunction. On remand — with the instruction from this Court merely to state its reasons for entering the injunction — the district court invited additional briefing and accepted yet another affidavit from Devlin. In compliance with this Court's mandate in the earlier appeal, the district court stated its reasons for issuing the injunction. It is clear from the record that Devlin was heard on the issue. In reaching this conclusion, we have considered the supplemental materials filed by both parties in response to questions raised at oral argument.

the arbitrator that they had not been compensated adequately by a settlement earlier approved by the district court. *Id.* at 438. Because this argument required the arbitrator to interpret the district court's settlement order, we held that an injunction was "necessary to prevent direct frustration of the district court's Settlement Approval Order." *Id.*[4]

The district court explained that the injunction at issue in this case was necessary because Devlin was continuing to attack the court's order approving the settlement of claims involving COLA benefits under the Plan. After the district court approved the settlement at the close of the fairness hearing, Devlin (1) filed a motion to reconsider the denial of his motion for leave to file an amended complaint in the consolidated cases pending in the Southern District of New York and (2) commenced a new lawsuit in the Southern District of New York alleging that prosecution of this case constituted a breach of fiduciary duty and that the settlement was procured by collusion. These actions, according to the district court, "were clearly an attempt to relitigate issues" that it had already decided.

It remains clear that "Devlin was seeking to undermine the district court's approval of the class settlement." *Scardelletti I*, 265 F.3d at 212. The district court heard Devlin's objections to the settlement at the fairness hearing, and this Court heard his objections on appeal. We affirmed the district court's approval of the settlement, and Devlin is bound by that judgment. *See Devlin*, 536 U.S. at 10 (stating that "nonnamed class members are parties to the proceedings in the sense of being bound by the settlement"). Devlin's repeated attempts to "end run, at the last minute, the district court's judgment" approving

---

[4]We also found that the injunction was proper "to cure the injustices created by the [plaintiffs] through their abuse of the MDL process," but this conclusion plainly constituted an additional ground for approval of the injunction. 315 F.3d at 439. A finding of misconduct was not, as Devlin argues, a necessary condition for affirmance. We need not express an opinion whether Devlin's repeated attacks on a class action settlement amounts to misconduct that would warrant issuance of an injunction.

the settlement in this case provided ample justification for issuance of an All Writs Act injunction. *In re March*, 988 F.2d at 500.[5]

B.

Devlin also argues that the injunction should be set aside because its description of the forbidden conduct is vague and ambiguous. The district court's order states that Devlin is "enjoined from making any filing in any forum against any person, including counsel in this case or their law firms, that raises issues encompassed within the settlement of this action or that directly or collaterally attacks the settlement of this matter, except in this Court or on appeal from the Orders of this Court."

The specificity requirement of Rule 65(d) serves two important purposes: (1) to give parties subject to the injunction proper notice of the prohibited conduct and (2) to facilitate meaningful appellate review. *Schmidt v. Lessard*, 414 U.S. 473, 476-77 (1974); *CAC Intel, Inc. v. Skippy, Inc.*, 214 F.3d 456, 459 (4th Cir. 2000). To be sure, the specificity requirement is "mandatory and must be observed in every instance." *Scardelletti I*, 265 F.3d at 211. Yet "[t]he mere fact that . . . interpretation is necessary does not render the injunction so vague and ambiguous that a party cannot know what is expected of him." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999) (internal quotations omitted).

We conclude that the language of the district court's injunction was sufficiently specific both to put Devlin on notice that he may not continue to pursue litigation outside the district court concerning matters already resolved in this case and to allow this Court an opportunity

---

[5]Devlin's reliance upon *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28 (2002), and *Clinton v. Goldsmith*, 526 U.S. 529 (1999), is misplaced. While these cases establish that the All Writs Act does not itself confer subject matter jurisdiction, there is no question that the district court had jurisdiction to adjudicate the class action at issue here. The All Writs Act merely authorized the district court to enter an order to protect a judgment it had entered in a case over which it already had jurisdiction under 28 U.S.C. § 1331.

for meaningful review. *See Schmidt*, 414 U.S. at 476-77; *CAC Intel, Inc.*, 214 F.3d at 459. Other courts have approved similar restrictions on relitigation. *See*, *e.g.*, *Feltner v. Title Search Co.*, 283 F.3d 838, 841-42 (7th Cir. 2002) (affirming entry of a contempt order against a party who violated an injunction forbidding that party from "relitigating in the related state-court action" certain issues raised in the state-court complaint because the district court had already decided those issues); *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1524-26 (9th Cir. 1983) (approving an order enjoining the plaintiff from "relitigating, or attempting to relitigate . . . the factual and legal issues adjudicated and dismissed" in the pending case). The district court's injunction satisfies the specificity requirement of Rule 65.[6]

## III.

The district court necessarily determined that Devlin and other class members were adequately represented by the named class representatives. Those representatives obtained a settlement for the class

---

[6]Devlin's constitutional claims are meritless. First, Devlin argues that the injunction violates his First Amendment rights to free speech and access to courts. As we noted in the prior appeal, "the injunction explicitly leaves Devlin the option of pursuing an action in the District of Maryland, and he is not precluded from litigating in any court any matter not connected with this litigation." *Scardelletti I*, 265 F.3d at 213 n.21. The district court's limitation on the scope of its injunction preserves Devlin's First Amendment rights. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Bounds v. Smith*, 430 U.S. 817, 823 (1977).

Second, Devlin argues that he has been deprived of due process. Devlin's due process arguments focus on the procedures surrounding the approval of the settlement, not the issuance of this injunction. Specifically, Devlin contends that he was deprived of due process when he was denied leave to intervene and when the district court approved a settlement that he claimed was the product of collusion among the named parties. We heard Devlin's objections to the settlement once before, and we rejected them on their merits. *Scardelletti II*, 43 Fed. Appx. at 528-29; *Scardelletti I*, 265 F.3d at 202-04. To the extent that Devlin claims a violation of due process concerning the adequacy of the district court's hearings on this matter or the language of the injunction itself, we reject these claims for the reasons stated above.

that the district court and this Court deemed fair and reasonable. Devlin is bound by that settlement, and the district court properly entered an injunction under the All Writs Act to protect it from repeated attack. The judgment of the district court is

*AFFIRMED*.